1   MAUREEN E. MCCLAIN (State Bar No. 062050)
    Email: mcclain@kmm.com
2   ALEX HERNAEZ (State Bar No. 201441)
    Email: hernaez@kmm.com
3   KAUFF MCCLAIN & MCGUIRE LLP
    One Post Street, Suite 2600
4   San Francisco, California 94104
    Telephone:   (415) 421-3111
5   Facsimile:   (415) 421-0938

6   Attorneys for Defendant
    DOLLAR TREE STORES, INC.
7
    BETH HIRSCH BERMAN (VA Bar No. 28091)
8   Email: bberman@williamsmullen.com
    WILLIAMS MULLEN
9   999 Waterside Drive
    1700 Dominion Tower
10  Norfolk, VA 23510
    Telephone:   (757) 629-0604
11  Facsimile:   (757) 629-0660

12  *Pro Hac Vice* Attorneys for Defendant
    DOLLAR TREE STORES, INC.
13

14              UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16

17  KASSONDRA BAAS and KELLY LOFQUIST,          CASE NO. C 07-03108 JSW
    individually and on behalf of all others
18  similarly situated,                          **DEFENDANT DOLLAR TREE
                                                 STORES, INC.'S NOTICE OF
19              Plaintiffs,                       MOTION AND MOTION TO DENY
                                                 CLASS CERTIFICATION;
20  v.                                           MEMORANDUM OF POINTS AND
                                                 AUTHORITIES IN SUPPORT
21  DOLLAR TREE STORES, INC.,                    THEREOF**

22              Defendant.                        **DATE:**   April 4, 2008
                                                 **TIME:**   9:00 a.m.
23                                               **DEPT.:**   Crtrm. 2, 17th Floor
                                                 **JUDGE:**   Hon. Jeffrey S. White
24
                                                 COMPLAINT FILED: June 13, 2007
25                                               TRIAL DATE:    No date set.

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;     CASE NO. C 07-03108 JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

# TABLE OF CONTENTS

2

Page

3　　NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION ....................1

4　　MEMORANDUM OF POINTS AND AUTHORITIES ........................................................2

　　　I.　　INTRODUCTION ...............................................................................................2

5

　　　II.　　STATEMENT OF FACTS...................................................................................5

6　　　　　A.　　Dollar Tree's Payroll Policies.......................................................................5

7　　　　　B.　　Statistical Data from Punch Audit Reports .................................................7

　　　　　C.　　Plaintiff Kassondra Baas' Employment at Dollar Tree Stores, Inc..............9

8　　　　　D.　　Plaintiff Kelly Lofquist's Employment at Dollar Tree Stores, Inc...............10

9　　　III.　　ARGUMENT .....................................................................................................10

10　　　　　A.　　Plaintiffs Will Be Unable To Prove The Necessary Pre-Requisites
　　　　　　　　For This Action To Be Certified As A Class Action....................................10

11　　　　　B.　　Plaintiffs Do Not Satisfy The Requirements of Rule 23(a).........................11

　　　　　　　　1.　　The Proposed Class Is Numerous.................................................12

12
　　　　　　　　2.　　There Is No Commonality Among The Proposed Class
13　　　　　　　　　　Members. .......................................................................................12

14　　　　　　　　3.　　Plaintiffs' Claims Are Not Typical Of The Proposed Class Of
　　　　　　　　　　Hourly Employees. .......................................................................16

15　　　　　　　　4.　　The Plaintiffs Do Not Fairly And Adequately Protect The
　　　　　　　　　　Interests Of Other Members Of The Class. ..................................18

16
　　　　　　　　　　a.　　The Plaintiffs' Counsel Is In Conflict With The Class ..........18

17　　　　　　　　　　b.　　The Plaintiffs' Interests Are In Conflict With The Class.......20

18　　　　　　　　　　c.　　Plaintiffs Do Not Satisfy The Requirements Of Rule
　　　　　　　　　　　　23(b) ................................................................................22

19　　　　　　　　5.　　Adjudication Of The Plaintiffs' Claims Would Not Does Not
　　　　　　　　　　Create An Incompatible Standard Of Conduct Or Alter The
20　　　　　　　　　　Claims Of Other Parties.................................................................22

　　　　　　　　6.　　Certification Under Rule 23(b)(2) Is Inappropriate.........................23
21
　　　　　　　　7.　　Common Issues Do Not Predominate ...........................................23

22　　　　　　　　8.　　A Class Action Would Not Be Manageable Or Superior To
　　　　　　　　　　Individual Actions...........................................................................24
23
　　　IV.　　CONCLUSION..................................................................................................25

24

25

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;　　　　CASE NO. C 07-03108 JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Abed et al. v. A.H. Robins Company, et al. (In re Northern District of California, Dalkon Shield IUD Products Liability Litigation),*
693 F.2d 847 (9th Cir. 1982) ...................................................................................25

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997)........................................................................................ 11, 23

*Baby Neal v. Casey,*
43 F.3d 48 (3d Cir. 1994) ......................................................................................12

*Basco v. Wal-Mart Stores, Inc.,*
No. 00-3184, 2004 WL 1497709 (E.D.La. July 2, 2004)..........................................15

*Blackwell v. SkyWest Airlines, Inc.,*
245 F.R.D. 453 (S.D. Cal. 2007) ............................................................................15

*Brown v. Ticor Title Ins. Co.,*
982 F.2d 386 (9th Cir. 1992) ..................................................................................20

*Castle v. Wells Fargo Financial, Inc.,*
Case 3:06-cv-04347-SI 2008 WL 495705 (N.D.Ca. Feb. 20, 2008) ..................14, 15

*Cornn v. United Parcel Service, Inc.,*
No. C03-2001 TEH, 2005 WL 2072091 (N.D.Cal. Aug. 26, 2005)............................15

*Crawford v. Honig,*
37 F.3d 485 (9th Cir. 1994) ....................................................................................20

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974)......................................................................................... 10, 11

*General Tel. Co. of the Southwest v. Falcon,*
457 U.S. 147 (1982) ..............................................................................................16

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ......................................................................... passim

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) ...........................................................11, 17, 18, 21

*Hansberry v. Lee,*
311 U.S. 32 (1940) ................................................................................................18

- ii -

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-03108 JSW

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

*Huston v. Imperial Credit Commercial Mortgage Invest. Corp.,*
   179 F.Supp.2d 1157 (C.D.Cal. 2001) ........................................................ 19

*In re County of Los Angeles,*
   223 F.3d 990 (9th Cir. 2000) .................................................................... 19

*Lawrence v. Philadelphia, No:03-CV-4009,*
   2004 WL 945139, *2 (E.D. Pa. Apr. 29, 2004) ........................................ 16

*Lerwill v. Inflight Motion Pictures, Inc.,*
   582 F.2d 507 (9th Cir. 1978) .................................................................... 18

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v.
   Las Vegas Sands, Inc.,*
   244 F.3d 1152 (9th Cir. 2001) .................................................................. 23

*Mateo v. M/S Kiso,*
   805 F.Supp. 761 (N.D. Cal. 1991) ............................................................ 24

*McDonnell Douglas Corp. v. U.S. Dist. Ct., C.D. of Cal.,*
   523 F.2d 1083 (9th Cir. 1975) .................................................................. 22

*Miller v. Mackey Int'l.,*
   452 F.2d 424 (5th Cir. 1971) .................................................................... 10

*Molski v. Gleich,*
   318 F.3d 937 (9th Cir.2003) ..................................................................... 23

*Moore v. Hughes Helicopters, Inc.,*
   708 F.2d 475 (9th Cir. 1983) .................................................................... 11

*Moreno v. Autozone, Inc.,*
   2007 WL 4287517 (N.D.Cal. Dec 6, 2007)......................................... 19, 20

*Simmons v. T-Mobile USA, Inc.,*
   No. H-06-1820, 2007 WL 21008 (S.D. Tex. Jan. 24, 2007)...................... 16

*Valentino v. Carter-Wallace, Inc.,*
   97 F.3d 1227 (9th Cir. 1996) .................................................................... 24

*Van Allen v. Circle K Corp.,*
   58 F.R.D. 562 (C.D.Cal. 1972) ................................................................. 21

*Zinser v. Accufix Research Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001),
   amended by 273 F.3d 1266 (9th Cir. 2001).......................... 11, 22, 23, 24

- iii -

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-03108 JSW

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

# FEDERAL RULES

Federal Rules of Civil Procedure
23 .................................................................................................... 10, 11, 15
23(a) ....................................................................................................... 10, 11
23(a)(2) ........................................................................................................ 23
23(a)(4) .................................................................................................. 18, 20
23(b) ....................................................................................................... 11, 22
23(b)(1) ........................................................................................................ 11
23(b)(1)(A) ................................................................................................... 22
23(b)(1)(B) ................................................................................................... 22
23(b)(2) .................................................................................................. 11, 23
23(b)(3) .................................................................................................. 11, 22
23(c) ............................................................................................................... 1
23(d) ............................................................................................................... 1

# CALIFORNIA CASES

*Ames v. State Bar,*
    8 Cal.3d 910 (1973) ................................................................................. 19

*Cal-Pak Delivery, Inc. v. United Parcel Serv.,*
    52 Cal.App.4th 1 (1997) .......................................................................... 18

*Flatt v. Sup.Ct.,*
    9 Cal.4th 275 (1994) ................................................................................ 20

*Global Minerals & Metals Corporation v. Superior Court,*
    113 Cal.App.4th 836 (2003) .................................................................... 21

*Richmond v. Dart Industries, Inc.*
    29 Cal.3d 462 (1981) ............................................................................... 21

*Truck Ins. Exchange v. Fireman's Fund Ins. Co.,*
    6 Cal.App.4th 1050 (1992) ...................................................................... 20

# CALIFORNIA RULES

Rules of Professional Conduct of the State Bar of California,
    Rule 3-310(c)(3) ....................................................................................... 19

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-03108 JSW

1     **NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION**

2     TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that on April 4, 2008, at 9:00 a.m., or as soon

4 thereafter as counsel may be heard in Courtroom 2 of the above-entitled Court, located

5 at 450 Golden Gate Ave., 17th Floor, San Francisco, CA, Defendant, Dollar Tree Stores,

6 Inc. ("Dollar Tree") will, and hereby do, move for an order, pursuant to Federal Rules of

7 Civil Procedure 23(c) and (d), denying class certification of the claims filed by plaintiffs

8 Kassondra Baas and Kelly Lofquist on behalf of themselves and all others similarly

9 situated.

10        This Motion is based upon this Notice of Motion and Motion to Deny Class

11 Certification, the Memorandum Of Points and Authorities in support thereof, the

12 Declarations of Robert Crandall, Paula Brady, David McDearmon, Steve Pearson,

13 Charlotta Jacobson-Allen and Beth Hirsch Berman, the Request for Judicial Notice as

14 well as all records and proceedings in this action, and on such other and further matters

15 as may be presented to the Court in connection with the hearing on this Motion to Deny

16 Class Certification.  This Motion is brought pursuant to Federal Rules of Civil Procedure

17 23(c) and (d).

18 DATED:  February 29, 2008           Respectfully submitted,

19                           KAUFF MCCLAIN & MCGUIRE LLP

20

21                           By:_____/ S /_____

22                                   ALEX HERNAEZ

23                           Attorneys for Defendant
                             ALTA BATES SUMMIT MEDICAL

24                              CENTER

25

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3     Plaintiffs Kassondra Baas ("Bass") and Kelly Lofquist ("Lofquist")

4   (collectively "Plaintiffs"), both former Assistant Managers for Dollar Tree Stores, Inc.

5   ("Dollar Tree") in its Rohnert Park store, number 1868, brought this case as a class

6   action alleging that Dollar Tree had corporate-wide policies and practices that denied all

7   "non-exempt store employees" in California regular and overtime pay.  Plaintiffs seek to

8   have this action certified as a class action with them as the class representatives.

9   Although Plaintiffs allege six separate causes of action, all of the causes of action stem

10  from one alleged wrong – alleged wrongful manipulation of employee time records.

11  Dollar Tree vigorously denies the allegations, and further denies that this is a suitable

12  case for class treatment.

13     Dollar Tree is a public company with its headquarters in Chesapeake,

14  Virginia.  It is a single price point discount variety store retailer selling all merchandise for

15  $1.00 (in some cases 2 or 3 for $1.00) carrying a broad assortment of goods such as

16  health and beauty items, household cleaners, foods and beverages, seasonal goods,

17  toys, party goods, stationery, pet supplies, glassware and automotive products.  Dollar

18  Tree operates over 3,000 retail locations across the continental United States including

19  approximately 220 stores in California.  *See* Declaration of Paula Brady at ¶ 3.

20     Each retail location has a Store Manager who is responsible for running

21  the store, including without limitation, scheduling employees, reviewing and approving

22  payroll, maintaining accurate business records, supervising the store employees and

23  ensuring compliance with all applicable laws and regulations.  The Assistant Managers

24  perform some of the Store Manager's duties when the Store Manager is not in the store.

25  One such duty is ensuring all employees correctly record all time worked and make

26  necessary corrections to employee time records to capture accurately all time worked.

27  Depending upon the size of the retail store, there may be two, three or more Assistant

28  Managers all of whom are classified as non-exempt hourly employees who assist in

- 2 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO. C 07-03108 JSW

1   supervising the non-manager hourly employees. Some Assistant Managers are

2   employed full-time while others are part-time. The vast majority of the non-manager

3   hourly employees ("Hourly employees") work a part-time schedule of fewer than five

4   hours per day. *See* Declaration of David McDearmon at ¶¶ 3-5.

5          Dollar Tree also employs District Managers who oversee the operation of

6   the approximately 10-12 stores that comprise a district. *Id.* at ¶ 6. Currently, there are

7   24 districts in California. *Id.* The District Manager is responsible for ensuring the stores

8   in his or her district comply with Dollar Tree's policies and are productive stores. *Id.* The

9   District Manager is the Store Manager's primary connection to Dollar Tree. *Id.* Each

10  district in California is part of one of three regions that encompass California. Each

11  region is headed by a Regional Director. *Id.* The different regions also have their own

12  regional training and human resources personnel. *Id.*

13         Plaintiffs worked at a single Dollar Tree store in Rohnert Park, California

14  during a combined timeframe from October 2005 through February 2007. Compl. at ¶¶

15  12-15. Their time keeping records were entered and adjusted at that one store.

16  Therefore, any alleged wrongful conduct with regard to their time records occurred only

17  at store 1868. Upon this localized conduct, Plaintiffs cannot support a state-wide claim

18  against Dollar Tree. Dollar Tree employed thousands of employees at hundreds of

19  different stores, who worked in different regions, with different Regional Directors,

20  different District Managers, under different Store Managers and Assistant Managers and

21  under different daily circumstances throughout the class period. Therefore, there is no

22  common proof. Importantly, the only witnesses identified by Plaintiffs besides

23  themselves, Miguel Cruz and John Hansen, both former Dollar Tree Store Managers,

24  testified: 1. many of the changes they made to employee time records were proper; and

25  2. they could not identify from the records which changes were proper and which were

26  not. True and correct copies of the Deposition of John Hansen ("Hansen Dep.") 635:9-

27  23 and the Deposition of Miguel ("Cruz Dep.") 454:1-15 are attached as Exhibit D and E

28  to the Declaration of Beth Hirsch Berman, respectively. Evidence suggesting that two

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF            CASE NO. C 07-03108 JSW

1   Store Managers in the same district altered time entries in direct contravention of

2   company policy will not prove that it happened in any other store.  In fact, the employee

3   time records shows the opposite.  A review of employee time records throughout the

4   state of California reveals that employee time records were not systematically adjusted

5   so as to reduce the number of hours worked in any given day or pay period.  *See*

6   Declaration of Robert Crandall at ¶ 3, Ex. 1.  Indeed, the only common policy and

7   practice across the proposed class is Dollar Tree's policy that time worked is to be

8   properly recorded by all hourly employees and that they  are to be paid for all time

9   worked.

10          The proposed class is also not appropriate for certification because the

11   interests of the Assistant Managers clash with those of the Hourly employees under their

12   supervision.  Assistant Managers are responsible (along with Store Managers) for

13   reviewing time records and ensuring their accuracy.  McDearmon Decl. at ¶ 9.  If time is

14   not entered correctly, either through a mistake on the part of the Hourly employees or

15   because of computer system glitches, an Assistant Manager may enter and correct time

16   for the Hourly employees.  Hourly employees may not enter time for anyone but

17   themselves and may not adjust their time records or those of anyone else.  The

18   antagonisms between these two groups go to the heart of the liability issues regarding

19   whether Hourly employees had their time improperly adjusted to deny them pay.  Since

20   Plaintiffs and other Assistant Managers were charged with the responsibility of ensuring

21   the accuracy of Hourly employees' time records, they cannot adequately represent a

22   class of Hourly employees who allege they lost wages as a result of Dollar Trees failure

23   to maintain accurate time records.

24          Additionally, neither Baas nor Lofquist can adequately represent the

25   proposed class.  Counsel for Baas and Lofquist also represents John Hansen ("Hansen")

26   in a misclassification wage and hour lawsuit against Dollar Tree pending before this

27   Court. Hansen is the very same Store Manager they accuse of manipulating their time

28   records.  Already, Plaintiffs have given testimony under oath that conflicts with testimony

- 4 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1  provided by Hansen and his co-Plaintiff, Miguel Cruz ("Cruz").  This is a clear conflict of

2  interest that prohibits Baas and Lofquist from representing the class.

3  **II.    STATEMENT OF FACTS**

4      **A.    Dollar Tree's Payroll Policies.**

5      Dollar Tree's written payroll and wage policies comply with California's

6  statutory requirements as well as the Fair Labor Standards Act.  Dollar Tree's policy is to

7  pay overtime wages (one and one-half times the regular rate of pay) to all exempt

8  employees who work in excess of eight hours in a single day or forty hours in a week.[1]

9  In addition, Dollar Tree pays double time for work in excess of twelve hours in a day or

10  more than eight hours on an employee's seventh consecutive day of work.  Dollar Tree

11  requires its employees to record accurately the hours they work, including the actual

12  time taken for their meal breaks.  Dollar Tree's employee handbook states:

13      Federal Law and Dollar Tree's policies require all hourly paid
        associates to be paid in full for all time worked.  This includes
14      time spent performing administrative or other functions,
        preparing company reports or any other work or services
15      performed for the company.

16      Associates who do not record all the time worked or who
        otherwise violate this time clock policy are subject to
17      corrective action which may include termination of both the
        associate working the hours and the person(s) responsible
18      for letting it occur.  It is recommended that you count your
        own time worked at the end of the workweek to the nearest
19      quarter hour and make a note of it for your personal records.

20      Check your pay stubs to be sure you are paid for all time
        worked.  If there is any question about your pay, notify your
21      supervisor and s/he will make any adjustments.  Mistakes
        may occasionally occur, so we ask that you bring them to the
22      attention of your supervisor as soon as they are discovered.

23      We appreciate your hard work and loyalty to Dollar Tree and
        we want to pay you for every minute of it.

24  Brady Decl. at ¶ 7, Ex. B.

25      Store Managers and Assistant Managers were trained in these policies,

26  and were required to communicate these policies to all store Hourly employees.  *See*

27

28  [1] See Brady Decl. at ¶ 7, Ex. B.

- 5 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1    McDearmon Decl. at ¶¶ 7-9. Dollar Tree's Store Managers and Assistant Managers,

2    including Baas and Lofquist, were expected to comply fully with these policies. *Id.* The

3    applicable Wage Orders are also posted in each Dollar Tree retail store for all

4    employees to read. *See* McDearmon Decl. at ¶ 13.

5    To comply with the foregoing policy, all hourly employees are issued

6    unique employee numbers and access codes that allow them to enter the times that their

7    shifts and rest and meal breaks start and end. *See* Declaration of Steve Pearson at ¶ 5.

8    Time may be entered both at the cash register terminals on the sales floor and on a

9    computer kept in the store's office. *Id.* All are connected to a time tracking system

10   known as Compass.[2] *Id.* at ¶ 4.   It is Dollar Tree policy that all hourly employees are to

11   use Compass to record every start and end of shift, and all breaks. *See* Brady Decl. at

12   ¶¶ 7 and 8, Exs. B and C. Since employees sometimes neglect to clock in or out and

13   occasionally the system malfunctions, management level employees (Assistant

14   Managers and above) are able to adjust the time records for any employee in their store

15   other than themselves. *See* Pearson Decl. at ¶ 6. For example, management

16   employees are to manually correct or enter any part of a shift an employee has failed to

17   record accurately whether through a mistake on the employee's part or because of a

18   problem with the Compass system at the time the employee should have recorded time.

19   When any correction is made, Compass maintains a footprint of the original entry,

20   identifies the correction, identifies who made the correction and the date and time the

21   correction was made. *Id.* at ¶ 8. Dollar Tree can generate punch audit reports from

22   Compass which show each of the foregoing trails. *Id.* Dollar Tree has used punch audit

23   reports to conduct investigations when it has received allegations of inaccurate time

24   records. When it has determined that time records were falsified (or employees worked

25

26   _____

27   [2] Dollar Tree began using Compass to track employee time on or about June, 2006. Prior to
that, Dollar Tree used a time keeping system called Fastech. Fastech operated in a similar

28   manner to Compass but it did not provide as detailed punch tracking information as Compass
does. *See* Pearson Decl. at ¶ 9.

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1  off the clock), in accordance with its policy, Dollar Tree has terminated the management

2  employees who engaged in the improper conduct.  *See* McDearmon Decl. at ¶ 12.

3  　　　　Dollar Tree policy also requires that each employee sign a weekly Payroll

4  Summary Report, attesting to the accuracy of the time for which s/he is being paid.  *Id.* at

5  ¶ 11.  Moreover, employees are not permitted to punch time using another employee's

6  access code.  The purpose of the individual codes is to prevent timecard fraud and to

7  enhance the accuracy of the timekeeping records.  *See* Pearson Decl. at ¶¶ 5 and 7.

8  **B.    Statistical Data from Punch Audit Reports.**

9  　　　　Plaintiffs have asserted that they intend to reply on Dollar Tree's electronic

10  time keeping records to establish their case.  Berman Decl. at ¶ 3, Ex. A.  Those

11  records, referred to as punch audit reports, are retrievable by store, and for each hourly

12  employee identify when a punch was made, the type of punch, i.e., start shift, start

13  break, end shift, etc. and by whom the punch was made.  If a time entry was changed,

14  then more than one punch will appear for the same type of entry (i.e. two entries for a

15  start shift).  Each entry will have a trail as to the time and date when it was made and by

16  whom. The punch audit reports to do not identify why a change was made.  As a result, it

17  is impossible to discern from them whether a change was made to correct an error or if it

18  was made in contravention of Dollar Tree policy.  Hansen Dep. 635:9–23; Cruz Dep.

19  454:1-15.  The Plaintiffs have no evidence, either records created concurrently or even

20  belatedly, that identify the purpose of the changes recorded on the punch audit reports.

21  　　　　Plaintiffs allege that Dollar Tree made adjustments to reduce overall payroll

22  hours. Yet for the entire putative class, less than one percent of employee days had

23  time adjusted so as to result in a net loss of time.  Crandall Decl. at ¶ 3.  Thus, even if all

24  adjustments which led to a loss of time were improper, (which they were not) such

25  adjustments would affect fewer than one percent of the employee days.   The Fastech

26  data shows that sixty-five percent of all employees had no days where an edit resulted in

27  a reduction in hours.  *Id.* at ¶ 17.  Of the thirty-five percent who had edits that resulted in

28  a loss, the frequency of negatively edited days does not reach 1% until the 80th

- 7 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-03108 JSW

1  percentile. *Id.* The Compass data shows that seventy percent of employees had no edit

2  reductions to his or her time records. *Id.* at ¶ 18. Of that thirty percent that did, the

3  typical employee did not have negative edits that exceeded 1% until the 86th percentile.

4  *Id.* at ¶ 18. The mean for edits resulting in a loss of time is less than one percent of all

5  employee days. *Id.* at ¶ 17. Such records demonstrate not only that Dollar Tree did not

6  improperly alter time records but also that Plaintiffs' claims, if true, are neither typical or

7  common.[3]

8          Second the Plaintiffs allege that Dollar Tree made adjustments to subtract

9  time worked to avoid payment of overtime wages. In the Fastech data, only eighteen

10  percent of the negative edits caused an eight-plus hour day to become a day of eight

11  hours or less. Crandall Decl. at ¶ 25. This means that only 0.12 percent of employee

12  days were adjusted to less than eight hours. *Id.* In the Compass data, only twenty

13  percent of the negative edits caused an eight-plus hour day to become a day of eight

14  hours or less. *Id.* Thus, negative overtime adjustments affected fewer than 0.08 percent

15  of the employee days. *Id.*

16          Lastly, the Plaintiffs allege that Dollar Tree made adjustments to subtract

17  time worked to fewer than five hours to deprive employees of an entitlement to meal

18  periods. In the Fastech data only twelve percent of the negative edits adjusted an

19  employee's time below five hours. *Id.* This means only 0.08 percent of employee days

20  were adjusted to less than five hours. *Id.* Under the Compass data, only seven percent

21  of the negative edits resulted in an employee's time falling below five hours. *Id.* Thus,

22  only 0.02 percent of employee days were edited to reduce an employee's time to under

23  five hours. *Id.*

24          The statistics clearly show that there is no state-wide policy to deprive

25  employees of time worked for any reason. Of the less than one percent of employee

26  days edited, seventy percent of the edits have no effect on either entitlements to meal

27

28

---

[3] Additionally, not all time edits are negative. Adjustments that actually added time to the employee's punches were more common. Crandall Decl. at ¶ 3, Ex. A.

- 8 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-03108 JSW

1  breaks or overtime wages. *Id.* Moreover, the number of employees whose time was

2  negatively adjusted, for whatever reason, is so small that there is no commonality across

3  the proposed class.

4      Even when reviewing the punch audit reports for stores in the same district

5  as 1868, there is no pattern of adjusting time records downward, as the data

6  demonstrates. *See* Declaration of Charlotta Jacobson-Allen at ¶¶ 3-5, 8, Ex. C. Indeed,

7  some stores in the same district as the Plaintiffs' store had no corrections to employee's

8  time, while others had corrections, but none that would affect overtime compensation, or

9  if affected, so infrequently and in such small quantities that no improper purpose could

10  be inferred. *Id.* at ¶¶ 4-6, Ex. A. Moreover, the evidence shows that Dollar Tree paid

11  overtime to employees when worked. Dollar Tree did not discipline the Store Managers

12  for incurring overtime. *See* Brady Decl. at ¶ 9.

13      **C.    Plaintiff Kassondra Baas' Employment at Dollar Tree Stores, Inc.**

14      Dollar Tree hired Baas ("Baas") as an hourly associate in October 2005.

15  She was promoted to Assistant Manager on April 5, 2006. *Id.* at 4. Store Manager John

16  Hansen terminated Baas on January 26, 2007, for multiple instances of failing to follow

17  company policies and procedures. *See* Hansen Dep. 23:3-6; 25:25-26:22. As an

18  Assistant Manager, Baas was not only trained in Dollar Tree's policies and procedures

19  but also was responsible for enforcing them with respect to Hourly employees working

20  under her supervision.

21      In reviewing punch audit reports for the time period covering Baas' tenure,

22  Dollar Tree has identified eleven instances where Baas' time records were manually

23  adjusted in a way that would affect overtime. *See* Jacobson-Allen Decl. at ¶¶ 4-5, 7 Ex.

24  B. While there is no evidence that these manual adjustments were improper, the manual

25  adjustments resulted in a reduction of a total of only 1.48 hours in overtime of which 42

26  minutes were paid at the regular rate of pay. In contrast, Baas was paid for 14.29 hours

27  of overtime during her time with Dollar Tree. *See* Brady Decl. at ¶ 6, Ex. A.

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;     CASE NO. C 07-03108 JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    **D.    Plaintiff Kelly Lofquist's Employment at Dollar Tree Stores, Inc.**

2    Dollar Tree hired Lofquist as an hourly associate in August 2006.  *Id.* at ¶

3    5.  She was promoted to Assistant Manager on October 1, 2006.  *Id.*  As an Assistant

4    Manager, she was trained in Dollar Tree's policies and procedures and had responsibility

5    for enforcing those policies with respect to Hourly employees working under her

6    supervision.  Store Manager John Hansen terminated Lofquist on February 12, 2007, for

7    unacceptable work performance which included repeated failures to report to work on

8    time.  *See* Hansen Dep. 218:16-219:4.

9    After reviewing the punch audit reports for the time period covering

10   Lofquist's tenure, Dollar Tree has identified one instance where Lofquist's time records

11   were adjusted resulting in a reduction of .68 hours in overtime.[4]  *See* Jacobson-Allen

12   Decl at ¶¶ 3-5, 8, Ex. C.  Again, there is no evidence that this adjustment was improper.

13   Dollar Tree's records also disclose that it paid Lofquist for 1.82 hours at the overtime rate

14   and 13.82 hours at the double time rate during her tenure. *See* Brady Decl. at ¶ 6, Ex. A.

15   **III.    ARGUMENT**

16   **A.    Plaintiffs Will Be Unable To Prove The Necessary Pre-Requisites For This Action To Be Certified As A Class Action.**

17   "In determining the propriety of a class action, the question is not whether

18   the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but

19   rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417

20   U.S. 156, 178 (1974) (quoting *Miller v. Mackey Int'l.*, 452 F.2d 424 (5th Cir. 1971))

21   (internal quotation marks omitted).  A class action may be certified only if "(1) the class is

22   so numerous that joinder of all members is impracticable; (2) there are questions of law

23   and fact common to the class; (3) the claims or defenses of the representative parties

24   are typical of the claims or defenses of the class; and (4) the representative parties will

25   fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).  In addition

26

27   ───────────────

[4] During her deposition, Lofquist also alleged she worked off the clock stocking during the third

28   shift.  That allegation was denied by her Store Manger, John Hansen.  Hansen Dep. 547:23-548:16.

- 10 -

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;    CASE NO. C 07-03108 JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    to satisfying these prerequisites, parties seeking class certification must show that the

2    action is maintainable under Rule 23(b)(1), (2) or (3).  *See* Rule 23(b); *Amchem*

3    *Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Rule 23(b)(3) permits class actions

4    when "the court finds that the questions of law or fact common to the members of the

5    class predominate over any questions affecting only individual members, and that a

6    class action is superior to other available methods for the fair and efficient adjudication of

7    the controversy."  Fed.R.Civ.P. 23(b)(3).

8            The party seeking class certification bears the burden of establishing that

9    the requirements of both Rules 23(a) and 23(b) have been met. *See Zinser v. Accufix*

10   *Research Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001), amended by 273 F.3d 1266

11   (9th Cir. 2001); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The

12   merits of the class members' substantive claims are generally irrelevant to this inquiry.

13   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Moore v. Hughes*

14   *Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983).  However, courts are "at liberty to

15   consider evidence which goes to the requirements of Rule 23 even though the evidence

16   may also relate to the underlying merits of the case," and a court may only certify a class

17   after a "rigorous analysis" as to whether the requirements have been satisfied. *Hanon*,

18   976 F.2d at 509 (internal quotations omitted). In this case, Plaintiffs will be unable to

19   establish the pre-requisites for class certification for the reasons set forth below.

20   **B.      Plaintiffs Do Not Satisfy the Requirements of Rule 23(a).**

21           Under Rule 23(a), the party seeking class certification must establish: (1)

22   that the class is so large that joinder of all members is impracticable (i.e., numerosity);

23   (2) that there are one or more questions of law or fact common to the class (i.e.,

24   commonality); (3) that the named parties' claims are typical of the class (i.e., typicality);

25   and (4) that the class representatives will fairly and adequately protect the interests of

26   other members of the class (i.e., adequacy of representation). *See* Fed.R.Civ.P. 23(a).

27

28

KAUFF McCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;    CASE NO. C 07-03108 JSW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    **1.    The Proposed Class Is Numerous.**

2    Dollar Tree does not dispute that the proposed class satisfies the

3    numerosity requirement.

4    **2.    There Is No Commonality Among The Proposed Class Members.**

5    The requirement of commonality "seek[s] to assure that the action can be

6    practically and efficiently maintained [as a class action]." *Baby Neal v. Casey*, 43 F.3d

7    48, 56 (3d Cir. 1994). Commonality focuses on the relationship of common facts and

8    legal issues among class members. "Class treatment makes no sense if there are no

9    common issues; the trial court would gain nothing but logistical headaches from the

10    combination of the cases for trial." *Id.* at 55.

11    To demonstrate commonality, plaintiffs must show at least one significant

12    issue of fact or theory of law common to the entire class. *See Hanlon v. Chrysler Corp.,*

13    150 F.3d 1011, 1020 (9th Cir. 1998). Plaintiffs have argued that all the employees in the

14    putative class are subject to the same policies and procedures, namely Dollar Tree uses

15    the same Compass timekeeping system to deprive employees of regular pay and

16    overtime. *See* Transcript of Proceedings held on August 24, 2007, 4:21-25, attached to

17    Request for Judicial Notice. However, Plaintiffs base their case on the allegations

18    arising from the one store in which they worked and the testimony of one other Store

19    Manager in the same district. Plaintiffs have failed to produce any evidence that Dollar

20    Tree's policies or procedures are improper. Plaintiffs have produced no evidence,

21    credible or otherwise, to support their allegation that time records were altered

22    improperly in any store other than stores 1868 and 2262. In fact, the evidence is to the

23    contrary. Fewer than 1% of all hourly employee days were edited to have time

24    reduced.[5] Crandall Decl. at ¶ 3, Ex. A. Stated another way, on any given day, more

25    than 99% of Dollar Tree's hourly employees in California had no negative adjustment to

26

27

28    [5] This number reflects all edits that reduced the amount of time worked without regard to the reason for the edit.

- 12 -

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF        CASE NO. C 07-03108 JSW

1   their time.  Consequently, Plaintiffs can point to no common fact to support their claim

2   that Dollar Tree improperly altered time clock records to reduce payroll.

3         The only other supposed common fact to which Plaintiffs point is that

4   Hansen, their Store Manager, who was allegedly altering time and depriving them of pay,

5   told them that District Manager Tellstrom told him to do it.  A true and correct copy of the

6   Deposition of Kelly Lofquist ("Lofquist Dep.") 257:10-13 is attached as ¶ 8, Exhibit F to

7   the Declaration of Beth Hirsch Berman.  Yet, that Store Manager, Hansen, denied that

8   Tellstrom told him to alter time records.  Hansen Dep. 273:23-274:2.  At their

9   depositions, Plaintiffs admitted that they never heard Tellstrom instruct Hansen to alter

10  their time.  A true and correct copy of the Deposition of Kassondra Baas ("Baas Dep.")

11  Baas Dep. 79:12-22 is attached as ¶ 9, Exhibit G to the Declaration of Beth Hirsch

12  Berman.  Lofquist Dep. 257:3-13; 260:18-21.  As noted, Hansen testified it was basically

13  his own decision to change time, and "he could not recall" whether Tellstrom had so

14  instructed him (surely a recollection he would have if such occurred) and that he knew it

15  was wrong and against Dollar Tree policy to change time records to deduct from time

16  actually worked.  Hansen Dep. 273:23-274:2.  Ironically, Cruz (who was not in a position

17  to alter Plaintiffs' time) testified that Tellstrom had instructed him to engage in such

18  alterations.  Cruz Dep. 64:20-65:4.  Cruz's testimony is patently false on many levels.[6]

19  Despite his claims otherwise, the punch audit reports simply do not show he engaged in

20  significant time alterations that deprived employees of pay.  Cruz Dep. 94:3-10; 96:1-9;

21  253:24-254:25.  Even if Plaintiffs' and Cruz's testimony were taken as true for purposes

22  of this motion, at most Plaintiffs would have established a fact common to two stores.

23  They have presented no evidence to point to similar activity in the more than 200 other

24  Dollar Tree stores in California.

25        If Plaintiffs' are correct that Dollar Tree's Compass system enabled

26  management on a state-wide basis to reduce employee time to deprive them of time

---

27  [6] Mr. Cruz testified that he went into Compass and changed the records so as to deprive all
28  employees in his store of overtime wages.  Cruz Dep. 70:13-20.  However, a review of the punch
    audit reports for his store shows that this is not true.  Cruz Dep. 94:3-10; 96:1-9; 253:24-254:25

- 13 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-03108 JSW

1    worked, then there should be state-wide evidence of time adjustments reducing  the

2    amount of time that employees worked.   In fact, the extremely low number of time

3    corrections state-wide suggests the opposite – Dollar Tree's use of the Compass system

4    is remarkably accurate in properly recording and capturing all time worked. As shown

5    above, for the entire putative class, less than 0.7 percent of employees' days had time

6    adjusted negatively.  Crandall Decl. at ¶ 10.  The fact that less than 0.7 percent of

7    employee days time entries were altered does not suggest that Dollar Tree has a policy

8    of depriving its employees of payment for all time worked.  The median employee had

9    his or her time adjusted zero percent of the time.  *Id.* at ¶¶ 17, 18.  In other words, the

10   "most common" employee has experienced no negative time adjustments.  *Id.* at ¶ 19.  It

11   strains reason to certify a class of thousands when only 0.7 percent of employee days

12   were negatively adjusted.

13              Moreover, a single finding of improper alterations will not be applicable

14   class wide.  There are many proper reasons for manual adjustments to time.  Hansen

15   Dep. 274:11-27:5.  It is not possible to tell from Compass (or Fastech) alone the reason

16   time was adjusted.  Each time adjustment will have to be examined.  See, e.g., Hansen

17   Dep. 286:15-287:21.  If each time alteration will have to be examined, the fact the time

18   entry was adjusted does nothing to establish commonality across the putative class.

19   *Castle v. Wells Fargo Financial, Inc.*, Case 3:06-cv-04347-SI 2008 WL 495705 (N.D.Ca.

20   Feb. 20, 2008).  ("The variety of different circumstances under which the declarants were

21   allegedly required to work unpaid overtime also weighs against certification. Resolution

22   of plaintiffs' claims would require individualized determinations, and would necessitate

23   testimony from individual employees and their supervisors about the schedules actually

24   worked and whether managers were aware of the overtime hours worked.  Plaintiffs'

25   claims of altered time cards would similarly require class member-specific testimony and

26   evidence regarding the circumstances surrounding the alterations, and defendant would

27   be entitled to show that any alterations were made for legitimate reasons, which could

28   differ for each class member.")

- 14 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO. C 07-03108 JSW

1            Other courts have denied certification in similar cases, finding that

2  individual issues predominate such that the employees are not similarly-situated. Judge

3  Illston recently came to a similar conclusion in *Castle v. Wells Fargo Financial, Inc.*,

4  Case 3:06-cv-04347-SI 2008 WL 495705 (N.D.Ca. Feb. 20, 2008). The *Castle* plaintiffs

5  sought to certify a nationwide class of Wells Fargo employees based upon the allegation

6  that Wells Fargo utilized a timekeeping system which allowed management to deprive

7  the hourly employees of overtime compensation by manipulating time records. The

8  plaintiffs submitted declarations from individual employees all stating that they were not

9  paid for some amount of overtime worked, and that they were pressured by their

10  managers not to record overtime hours. The court found that if the declarants were able

11  to prove the facts in their declarations, they would have strong individual claims;

12  "[h]owever, the Court finds that plaintiffs have not identified any company-wide policy or

13  practice to deny overtime and thus have failed to show that the various Wells Fargo

14  employees are similarly situated for purposes of class certification… At the most,

15  plaintiffs' evidence suggests differing 'policies' or practices depending on the branch or

16  the district, rather than on a nationwide basis." *Id.* at p. 5; *See, e.g.*, *Cornn v. United*

17  *Parcel Service, Inc.*, No. C03-2001 TEH, 2005 WL 2072091, *5 (N.D.Cal. Aug. 26, 2005)

18  ("Because the Court cannot determine whether a driver performed work during the

19  interval in question without undertaking individualized inquiries that predominate over

20  any common questions, class certification would be inappropriate."); *Blackwell v.*

21  *SkyWest Airlines, Inc.*, 245 F.R.D. 453, 469 (S.D. Cal. 2007) (Denying certification under

22  Rule 23 based on plaintiff's allegations of improper deductions from wages because the

23  actions of each individual manager would have to be examined; improper deductions

24  could not be gleaned from running a report.); *Basco v. Wal-Mart Stores, Inc.*, No. 00-

25  3184, 2004 WL 1497709, *7 (E.D.La. July 2, 2004) (denying certification stating that

26  "…plaintiffs seek to make a corporate policy to keep employee wage costs low sufficient

27  proof to justify the creation of a class of all Wal-Mart employees that have not been

28  properly paid overtime in the last three years. It is obvious from the discovery presented

- 15 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. C 07-03108 JSW

1    that this "policy" and its effects are neither homogeneous nor lend themselves to

2    collective inquiry.  The effects of the policy as alleged are anecdotal, that is to say

3    particularized.")  *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 21008, 6

4    (S.D. Tex. Jan. 24, 2007) (denying certification because "this is a case involving claims

5    of 'off the clock' unpaid overtime, where allegedly dozens (if not hundreds) of different

6    low-level supervisors with wide management discretion in practice violate Defendant's

7    clear, lawful written policies at some or many of Defendant's more than one hundred

8    different retail locations."); *see also Lawrence v. Philadelphia*, No:03-CV-4009, 2004 WL

9    945139, *2 (E.D Pa. Apr. 29, 2004).

10       Plaintiffs worked at only one Dollar Tree store in Rohnert Park, California

11   during a combined timeframe of October 2005 through February 2007.  Compl., ¶¶ 13

12   and 15.  Crediting fully Plaintiffs' allegations and those of their witnesses – Hansen and

13   Cruz, it is apparent that, at most, they have information about what two store managers

14   did in a single district.  Upon this localized observation, they cannot support a state-wide

15   claim against Dollar Tree.  Plaintiffs' have set forth no common set of facts applicable to

16   every hourly employee to establish class wide liability.  The only common fact is that

17   Dollar Tree has a written and enforced policy against time shaving.  Certifying a class of

18   thousands when time alterations occur to less than one percent of the employees will

19   create the logistical headaches the commonality requirement was designed to prevent.

20       **3.    Plaintiffs' Claims Are Not Typical Of The Proposed Class Of**
            **Hourly Employees.**

21       The claims of Plaintiffs must be typical of the claims of the class.  To be

22   considered typical for purposes of class certification, the claims of the putative class

23   must be "fairly encompassed by the named plaintiff's claims." *General Tel. Co. of the*

24   *Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation omitted).  The

25   commonality and typicality requirements are similar and tend to merge. *Id.* at 157 n. 13.

26   "The test of typicality is whether other members have the same or similar injury, whether

27   the action is based on conduct which is not unique to the named plaintiffs, and whether

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA  94104
TELEPHONE (415) 421-3111

- 16 -

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. C 07-03108 JSW

1   other class members have been injured by the same course of conduct." *Hanon v.*

2   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and quotation omitted).

3   Plaintiffs are unable to prove that their claims are "typical" of the classes of hourly

4   employees they seek to represent.

5           First, as indicated above, Plaintiffs, both Assistant Managers worked at a

6   single Dollar Tree store in Rohnert Park, California during a combined timeframe of

7   October 2005 through February 2007. Compl., ¶¶ 13 and 15. They imply a single

8   person, their District Manager, Mr. Tellstrom, as having allegedly directed the improper

9   alterations. They concede that they presently do not have any facts regarding anyone

10  other than Mr. Tellstrom. *See* RJN Exh. A, 4:15-5:3; 7:16-20. Moreover, the Plaintiffs'

11  Store Manager cannot remember if Mr. Tellsrom actually told him to improperly adjust

12  employees time. Hansen Dep. 273:23-274:2. In fact, Mr. Hansen states he knew the

13  improper alterations were contrary to Dollar Tree policy. *Id.* 648:13 – 17. Thus, there is

14  absolutely no evidence that the Plaintiffs' claims of shaving are "typical" of the hourly

15  employees in other stores or districts.

16          Not only have Plaintiffs failed to provide any evidence that their claims are

17  typical, the evidence shows exactly the opposite. Baas' time entries were adjusted

18  fourteen percent of the time. Crandall Decl. at ¶ 21. This is considerably higher than the

19  frequency of edits found across the entire proposed class. *Id.* The mean frequency of

20  adjustments using the Fastech data was 0.6 percent and for the Compass data was 0.4

21  percent with the median for both being zero. *Id.* at ¶¶ 17-18. In other words, Baas' time

22  was adjusted, for whatever reason, fifteen times more frequently than the average

23  employee. Baas is at or above the 95th percentile in frequency of edits. *Id.* at ¶ 21.

24  Even within her own store she is an anomaly. Baas had her time edited with more

25  frequency than any other employee in her store, ranking number one out of more than

26  forty employees. *Id.* at ¶ 22. Based on the statistics alone, Baas' claims are not typical

27  of the class.

28

KAUFF McCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. C 07-03108 JSW

1   While not as stark as Baas, the frequency of adjustment to Lofquist's time

2   exceeds that of the average employee. *Id.* at ¶ 23.

3   **4.   The Plaintiffs Do Not Fairly And Adequately Protect The Interests Of Other Members Of The Class.**

4   Rule 23(a)(4) dictates that the representative plaintiff must fairly and

5   adequately protect the interests of the class. To satisfy constitutional due process

6   concerns, unnamed class members must be afforded adequate representation before

7   entry of a judgment which binds them. *See Hanlon*, 150 F.3d at 1020 (citing *Hansberry*

8   *v. Lee*, 311 U.S. 32, 42-43 (1940)). "Absent class members must be afforded adequate

9   representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020

10  (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43, (1940)).

11  **a.   The Plaintiffs' Counsel Is In Conflict With The Class.**

12  For the representative Plaintiffs' counsel to meet the adequacy

13  requirement, the counsel must not have any conflicts of interest with other class

14  members and must be able to prosecute the action vigorously on behalf of the class.

15  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). "[W]here there

16  is reason to doubt the loyalty of counsel or the adequacy of counsel's representation,

17  serious questions arise concerning the preclusive effect of any resulting judgment." *Cal-*

18  *Pak Delivery, Inc. v. United Parcel Serv.*, 52 Cal.App.4th 1, 11-12 (1997). Plaintiffs'

19  counsel, The Edgar Law Firm, currently represents Hansen and Miguel Cruz in a

20  misclassification wage and hour lawsuit pending against Dollar Tree in this Court.

21  Hansen is the Store Manager whom Plaintiffs allege improperly altered their time

22  records. Hansen is also responsible for terminating Plaintiffs' employment with Dollar

23  Tree. During her deposition, Lofquist alleged she worked off the clock stocking, in the

24  presence of and at the direction of Hansen. Lofquist Dep. 247:4-248:17. That allegation

25  was denied by Hansen. Hansen Dep. 547:23-548:16. Moreover, Hansen testified in his

26  deposition that he knew it was against Dollar Tree policy to alter time records to reflect

27  less time than an employee actually worked. Hansen Dep. 648:13-17.

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1     Plaintiffs' allegation that Hansen violated the law is in conflict with

2   Hansen's interests and deposition testimony.  The heart of Plaintiffs' allegations is that

3   Dollar Tree has a policy of using the Compass system to deny overtime.  Hansen

4   explicitly denies this allegation.  Plaintiffs' allegations are clearly prejudicial to the

5   interests of Hansen.  In a class action context, "class counsel are subject to a

6   'heightened standard' which they must meet if they are to be allowed by the Court to

7   represent absent class members." *Huston v. Imperial Credit Commercial Mortgage*

8   *Invest. Corp.*, 179 F.Supp.2d 1157, 1167 (C.D.Cal. 2001).  The Edgar Law Firm's

9   representation of both Hansen and Plaintiffs is a clear conflict of interest.

10     The District Court for the Northern District of California follows California

11   ethical standards. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); Civil

12   Local Rule 11-4(a)(1). The applicable standard of conduct is set forth in Rules of

13   Professional Conduct of the State Bar of California, Rule 3-310(c)(3), which provides as

14   follows:

15          A member shall not, without the informed written consent of
            each client ... [r]epresent a client in a matter and at the same
16          time in a separate matter accept as a client a person or entity
            whose interest in the first matter is adverse to the client in the
17          first matter.

18   *Id.*  "A conflict of interest exists when a lawyer's duty on behalf of one client obligates the

19   lawyer to take action prejudicial to the interests of another client..." *Moreno v. Autozone,*

20   *Inc.*, 2007 WL 4287517, *5 (N.D.Cal. Dec 6, 2007).  "An 'adverse' interest is one that is

21   'hostile, opposed, antagonistic ... detrimental, unfavorable' to one's own interests."  *Id.*

22   (quoting *Ames v. State Bar,* 8 Cal.3d 910, 917 (1973)).

23     The Edgar Law Firm cannot sweep the conflict under the rug by obtaining

24   waivers from just the named plaintiffs.[7]  Waivers would have to be obtained from every

25   class member. *See Moreno v. Autozone, Inc.*, 2007 WL 4287517, "*7. "As a practical

26   matter, [Plaintiff's law firm] can not obtain written waiver of the actual conflicts of interest

27

28

[7] Dollar Tree has asked for, but Plaintiffs have failed to provide copies of the alleged waivers
received from them.  See Berman Decl. at ¶¶ 4 and 5, Ex. A.

- 19 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1   that exist from the absent class members." *Id.* "Absent each client's informed written

2   consent, dual representation of clients whose interests actually conflict is prohibited and

3   results in "per se or automatic" disqualification." *Moreno v. Autozone, Inc.*, 2007 WL

4   4287517, *6 (citing *Flatt v. Sup.Ct.,* 9 Cal.4th 275, 284 (1994)). "Moreover, under the

5   "hot potato rule", dual representation conflicts cannot be cured by the expedient of

6   severing the relationship with one of the clients." *Id.* (citing *Flatt v. Sup.Ct.*, 9 Cal.4th

7   275, 288 (1994); *Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, 6 Cal.App.4th 1050,

8   1056 (1992).

9          The Edgar Law Firm cannot represent both Plaintiffs and Hansen.

10  Certainly, the conflict precludes The Edgar Law Firm from vigorously representing the

11  interests of the absent class members. Therefore, Plaintiffs' counsel fails to meet the

12  requirements of Rule 23(a)(4). *See Hanlon*, 150 F.3d at 1020.

13                  **b.      The Plaintiffs' Interests Are In Conflict With The Class.**

14          "Adequate representation 'depends on the qualifications of counsel for the

15  representatives, an absence of antagonism, a sharing of interests between

16  representatives and absentees, and the unlikelihood that the suit is collusive.'" *Crawford*

17  *v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (quoting *Brown v. Ticor Title Ins. Co.*, 982

18  F.2d 386, 390 (9th Cir. 1992)). Plaintiffs will not be able to fulfill this obligation because

19  their interests are antagonistic to the interests of the class members they seek to

20  represent. Plaintiffs, former Assistant Managers, had a duty to make sure the time

21  records accurately captured all time worked by employees.

22          Plaintiffs, as Assistant Managers, were and are responsible for enforcing

23  Dollar Tree's policies, particularly when the Store Manager is not present. Because

24  Plaintiffs' and other Assistant Managers were charged with the responsibility of ensuring

25  accurate time records were kept, they cannot adequately represent a class of Hourly

26  employees who allege tampering with their time records, particularly where the putative

27  representatives may have done the tampering. Plaintiffs knew it was against Dollar Tree

28  policy to shave time; yet neither complained when the Store Manager allegedly took time

- 20 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO. C 07-03108 JSW

1  away from them and others. Baas Dep. 81:25-82:2; Lofquist Dep. 60:15-17.[8]  Indeed,

2  both Plaintiffs were aware of Dollar Tree's Careline whereby employees can

3  anonymously alert Dollar Tree to violations of the law or policy.  Baas Dep. 74:5-9;

4  Lofquist Dep. 60:5-8.  Neither Plaintiff contacted the Careline or any other person to

5  voice their concerns.  Baas Dep. 74:2-4; Lofquist Dep. 60:15-17; 214:9-13.  Baas

6  certainly knew what to do if her pay was incorrect; as she had previously contacted

7  Candace Camp from Dollar Tree's regional human resources office when she was not

8  getting paid an Assistant Manager's rate after her promotion.  Baas Dep. 59:19-60:7.

9  Both Plaintiffs knew how to alert Dollar Tree to problems, yet chose not to do so.

10      Because both Bass and Lofquist were involved in the alleged wrongful

11  acts, their claims are not typical of the employees who may have been unwittingly

12  harmed. *See Hanon*, 976 F.2d at 508 ("[A] named plaintiff's motion for class certification

13  should not be granted if there is a danger that the absent class members will suffer if

14  their representative is preoccupied with defenses unique to it.").  "Where there is a

15  conflict that goes to the very subject matter of the litigation, it will defeat a party's claim of

16  representative status.  Thus a finding of adequate representation will not be appropriate

17  if the proposed class representative's interests are antagonistic to the remainder of the

18  class." *Global Minerals & Metals Corporation v. Superior Court,* 113 Cal.App.4th 836,

19  851 (2003); *Richmond v. Dart Industries, Inc.,* 29 Cal.3d 462, 478-479 (1981).

20      The court in *Van Allen v. Circle K Corp.*, 58 F.R.D. 562, 564 (C.D.Cal.

21  1972), reached a similar conclusion, holding that the interests of former independent

22  operators, who would be interested only in the fullest possible financial recovery, were

23  adverse to current operators who wished to keep working with a financially robust

24  defendant with a favorable public image.

25

26

27

28

[8] Lofquist testified that she saw Hansen taking time away from a cashier named Tina. See Lofquist Dep. 40:21-41:12.

- 21 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-03108 JSW

1

### c.   Plaintiffs Do Not Satisfy The Requirements Of Rule 23(b).

2   Class certification pursuant to Rule 23(b)(3) requires the plaintiff to

3   establish that "the questions of law or fact common to the members of the class

4   predominate over any questions affecting only individual members, and that a class

5   action is superior to other available methods for the fair and efficient adjudication of the

6   controversy." It is unclear under which subsection the Plaintiffs' are seeking certification.

7   Therefore each is discussed in turn.

8

### 5.   Adjudication Of The Plaintiffs' Claims Would Not Does Not Create An Incompatible Standard Of Conduct Or Alter The Claims Of Other Parties.

9

10   "Rule 23(b)(1)(A) authorizes class actions to eliminate the possibility of

11   adjudications in which the defendant will be required to follow inconsistent courses of

12   continuing conduct. This danger exists in those situations in which the defendant by

13   reason of the legal relations involved can not, as a practical matter, pursue two different

14   courses of conduct." *See Zinser*, 253 F.3d at 1194. That is not the case. Plaintiffs are

15   seeking for Dollar Tree conduct itself in accordance with its stated policies which comply

16   with state and federal law. Applying Dollar Tree's policies to the Plaintiffs in no way

17   impairs Dollar Tree's ability to apply its policies to the rest of its employees.

18   Rule (b)(1)(B) authorizes class actions where individual actions might "as a

19   practical matter be dispositive of the interests of the other members not parties to the

20   adjudications or substantially impair or impede their ability to protect their interests."

21   Fed.R.Civ.P. 23(b)(1)(B). *McDonnell Douglas Corp. v. U.S. Dist. Ct., C.D. of Cal.*, 523

22   F.2d 1083, 1086 (9th Cir. 1975). This standard is met where "separate actions

23   inescapably will alter the substance of the rights of others having similar claims." *Id.*

24   (internal quotations omitted). Plaintiffs' action will not limit the rights of the other Dollar

25   Tree employees. *See Id.* ("At worst, individual actions would leave unnamed members

26   of the class with the same complexity and expense as if no prior actions had been

27   brought.").

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 22 -

1

### 6.    Certification Under Rule 23(b)(2) Is Inappropriate.

2    Rule 23(b)(2) authorizes class actions where "the party opposing the class

3    has acted or refused to act on grounds generally applicable to the class, thereby making

4    appropriate final injunctive relief or corresponding declaratory relief with respect to the

5    class as a whole." Fed.R.Civ.P. 23(b)(2). Certification under this section "is appropriate

6    only where the primary relief sought is declaratory or injunctive. A class seeking

7    monetary damages may be certified pursuant to Rule 23(b)(2) where such relief is

8    merely incidental to [the] primary claim for injunctive relief." *Zinser* at 1195 (citations and

9    internal quotation marks omitted); *Molski v. Gleich,* 318 F.3d 937, 947 (9th Cir.2003) (a

10   claim for monetary damages must be secondary to the primary claim for injunctive or

11   declaratory relief). Here Plaintiffs seek injunctive relief incidental to monetary relief.

12   Four of the Plaintiffs' six causes of action seek only monetary relief, only the remaining

13   two causes of action seeks injunctive relief in addition to monetary relief and statutory

14   penalties. Moreover, Plaintiffs are both former employees to which only monetary relief

15   applies

16

### 7.    Common Issues Do Not Predominate.

17   The predominance inquiry "focuses on the relationship between the

18   common and individual issues." *Local Joint Executive Bd. of Culinary/Bartender Trust*

19   *Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001). Consequently, the

20   presence of common issues of fact or law sufficient to satisfy the requirements of Rule

21   23(a)(2) is not by itself sufficient to show that those common issues predominate.

22   *Hanlon,* 150 F.3d at 1022. The "predominance inquiry tests whether the proposed

23   classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150

24   F.3d at 1011 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). The

25   predominance inquiry measures the relative weight of the common claims against the

26   individualized inquiry. *Id.* "Implicit in the satisfaction of the predominance test is the

27   notion that the adjudication of common issues will help achieve judicial economy." *Zinser*

28

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF        CASE NO. C 07-03108 JSW

1    at 1189 (9th Cir. 2001) (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th

2    Cir. 1996)).

3         In this case, the ability of each class member of the proposed class to

4    recover depends on a separate set of facts applicable only to him or her and will require

5    individualized proof employee by employee. Examination of the Compass system is not

6    enough. During their depositions, both Hansen and Cruz testified that it is impossible to

7    tell if manual alterations to time records are corrections or not. Hansen Dep. 635:9-23.

8    Cruz Dep. 454:1-15. The recorded time in the Compass system would have to be

9    compared against some other record of an employee's time, if such secondary source

10   even exists. Each employee would have to be examined as to the alterations to prove

11   that a violation occurred. Individual inquiries would predominate over any common

12   proof. In such cases, class certification is routinely denied because individualized issues

13   predominate. *Mateo v. M/S Kiso*, 805 F.Supp. 761, 774 (N.D. Cal., 1991) ("Here,

14   however, plaintiffs' wage and fraud claims arise from a complex course of conduct

15   involving multiple defendants and a series of different alleged promises and

16   misrepresentations… Second, even if common issues predominated here, the class

17   sought by plaintiffs is not manageable, and a class action would not be a superior format

18   for resolving the claims of the members of the proposed class.").

19        Accordingly, individualized inquiries will predominate. "If the main issues in

20   a case require the separate adjudication of each class member's individual claim or

21   defense, a [class] action would be inappropriate." *Zinser,* 253 F.3d at 1189.

22        **8.    A Class Action Would Not Be Manageable Or Superior To Individual Actions.**

23        Plaintiffs are unable to demonstrate that any of the common questions can

24   be resolved by proof that applies to all class members equally. Indeed, Plaintiffs cannot

25   present any plan to the trial Court for managing the complex issues of fact raised by the

26   class claims. The court must balance the manageability regarding the litigation of issues

27   common to the class as a whole against questions affecting individual class members.

28

- 24 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. C 07-03108 JSW

1  *Abed et al. v. A.H. Robins Company, et al.* (*In re Northern District of California, Dalkon*
2  *Shield IUD Products Liability Litigation*), 693 F.2d 847, 856 (9th Cir. 1982).  This case, as
3  a class action is not manageable, as it will quickly devolve into thousands of individual
4  inquiries regarding the schedules of individual class members, the actions of their Store
5  Managers and Assistant Managers, and the circumstances surrounding the manual
6  entries into Compass and Fastech.  There are over 10,000 hourly employees in the
7  proposed class.  A case of this magnitude is unmanageable when individualized issues
8  predominate.

9  **IV.  CONCLUSION**

10  For all of the foregoing reasons, Dollar Tree submits that Plaintiffs are
11  unable to establish the necessary elements for certification of the class claims.

12  DATED:  February 29, 2008                Respectfully submitted,

13                                                          KAUFF MCCLAIN & MCGUIRE LLP

14
15                                                          By:_____/ S /_____
                                                                                ALEX HERNAEZ

16                                                          Attorneys for Defendant
                                                            DOLLAR TREE STORES, INC.
17

18

19

20

21

22

23

24

25

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DENY CLASS CERTIFICATION;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. C 07-03108 JSW