1  Donald S. Edgar, Esq. (SBN 139324)
2  Jeremy R. Fietz, Esq. (SBN 200396)
   Rex Grady, Esq. (SBN 232236)
3  **EDGAR LAW FIRM**
   408 College Avenue
4  Santa Rosa, California, 95401
   Tel:   (707)  545-3200
5  Fax:   (707)  578-3040
6
   Attorneys for Plaintiffs,
7  KASSONDRA BAAS and KELLY LOFQUIST
   individually and on behalf of all employees
8  similarly situated
9
10           IN THE UNITED STATE DISTRICT COURT
11         FOR THE NORTHERN DISTRICT OF CALIFORNIA
12
13

| | |
|---|---|
| 14  KASSONDRA BAAS and KELLY LOFQUIST, individually and on behalf of all others similarly situated,<br>15<br>16       Plaintiffs,<br>17<br>18       v.<br>19  DOLLAR TREE STORES, INC.,<br>20       Defendant.<br>21<br>22 | CASE NO.  C 07-03108 JSW<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: April 4, 2008<br><br>Time:   9:00 a.m.<br><br>Courtroom 2<br><br>Honorable Jeffrey S. White |

-1-

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                                   07-03108 JSW

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO CERTIFY CLASS ACTION.................................................................p. 1

I. INTRODUCTION...........................................................................................................p. 1

II. LAW APPLICABLE TO CLASS CERTIFICATION....................................................p. 2

III. FACTUAL BACKGROUND.........................................................................................p. 3

IV. THE CLASS' CLAIMS..................................................................................................p. 5

    A. REGULAR AND OVERTIME WAGE CLAIMS............................................p. 5

    B. INACCURATE WAGE STATEMENT CLAIMS.............................................p. 6

V. THE CLASS MEETS ALL THE REQUISITES FOR CERTIFICATION
UNDER FRCP RULE 23................................................................................................p. 6

    A. SUMMARY OF LAW.......................................................................................p. 6

    B. STEP ONE: RULE 23(a)...................................................................................p. 7

        1. The Class Is So Numerous, Individual Adjudication Is Impracticable...p. 7

        2. Common Questions Of Law Exist Between Plaintiffs And The Class...p. 7

        3. Plaintiffs' Claims Are "Typical" Of The Class..........................................p. 8

        4. Plaintiffs And Their Counsel Are Adequate Class Representatives........p. 9

    C. STEP TWO: RULE 23(b).................................................................................p. 10

        1. Class Adjudication Is Superior To All Other Forms.............................p. 10

        2. Issues Common To The Class Predominate Over Individual Issues....p. 12

VI. CONCLUSION..............................................................................................................p. 15

# TABLE OF AUTHORITIES

## Federal Rules

Rule 23 (a)…pp. 6-10.

Rule 23 (b)…p. 9.

Rule 23 (b)(1)…pp. 6, 9, 10.

Rule 23(b)(3)…pp. 6, 9, 11, 12.

Rule 23 (c)(1)…p. 2.

## Federal Common Law

*Amchen Products, Inc. v. Windsor* (1997) 521 U.S. 591…p. 11.

*American Medical Systems, Inc., In Re* (6th Cir. 1996) 75 F.3d 1069…p. 8.

*Ansari v. New York University* (SD NY 1998) 197 FRD 112…p. 7.

*Blackie v. Barrack* (9th Cir. 1975) 524 F. 2d 891…pp. 2, 6, 14.

*Chavez v. IBP, Inc.* (E.D. Wash. 2002) 2002 WL 31662102…pp. 13, 15.

*Consolidated Rail Corp. v. Town of Hyde Park* (2d Cir. 1995) 47 F.3d 473…p. 6.

*Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156…pp. 2, 3.

*Franks v. O'Connor Corp.* (E.D. Pa. 1993) 1993 WK 76212…p. 15

*General Tel. Co. of Southwest v. Falcon* (1982) 457 U.S. 147…pp. 2, 9

*Hanlon v. Chrysler* (9th Cir. 1998) 150 F.3d 1011…pp. 8

*Hanon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497…p. 2

*J.I. Case v. Borak* (1964) 377 U.S. 426…p. 12.

*Katz v. Carte Blanche Corp.* 53 F.R.D. 539…p. 12.

*Ketchum v. Sunoco, Inc.* (E.D. Pa. 2003) 217 F.R.D. 354…pp. 8, 9.

*Ladegaard v. Hard Rock Concrete Cutters, Inc.* (N.D. Ill 2000) 200 WL 1774091…pp. 14, 15.

*Miller v. Mackey International, Inc.* (5th Cir. 1971) 452 F.2d 424…pp. 2,3.

*Mullen v. Treasure Chest Casino, L.L.C.* (5th Cir. 1999) 186 F.3d 620…pp. 7.

*Newswome v. Up-To-Date Laundry, Inc.* (Md. 2004) 219 F.R.D. 356…p. 13.

*O'Keefe v. Mercedes-Benz U.S.A., LLC* (E.D. Pa. 2003) 214 F.R.D. 266…p. 14.

*Perry v. U.S. Bank*, U.S. Dist. LEXIS 25050, Case No. C-00-1799-PJH…pp. 7-12.

1  *Romero v. Producers Dairy Foods, Inc.* (E.D. Cal. 2006) 235 F.R.D. 474…pp. 13-14.

2  *Rosario v. Livaditis* (7th Cir. 1992) 963 F.2d 1013…po. 8, 13.

3  *Taylor v. Safeway Stores, Inc.* (10th Cir. 1975) 524 F.2d 263…p. 6.

4  *United Energy Corp. Solar Power Modules* (C.D. Cal. 1988) 122 F.R.D. 251…p. 14.

5  *Windham v. American Brands, Inc.* (4th Cir. 1977) 565 F.2d 59…p. 14.

6  *Winkler v. DTE, Inc.* (D.Ariz. 2001) 205 F.R.D. 235…p. 14.

## Other Authorities

Kalven & Rosenfield, The Contemporary Function of The Class Suit, 8 U.Chi.L.Rev. 684…p. 11.

Notes of Advisory Committee on 1966 Amendments…pp. 10, 12, 14.

# NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

Notice is hereby given that plaintiffs Kassondra Baas and Kelly Lofquist hereby move for an order certifying this action to proceed as a class action. This motion will be heard on April 4, 2008 at 9:00 a.m. in Courtroom 2, 17th Floor, 450 Golden Gate Ave, San Francisco, CA before the Hon. Jeffrey S. White.

Plaintiffs Kassondra Baas and Kelly Lofquist seek to certify the following defined class:

> Current and former non-exempt employees of Defendant DOLLAR TREE's stores within the State of California at any time from the date that is four years prior to the filing of the original complaint in this matter up to the date of trial who was electronic time punches were subject to post-entry reductions prior to the calculation and payment of earnings.

This motion to certify is made pursuant to Rule 23 of the Federal Rules of Civil Procedure (FRCP). The motion should be granted as the proposed class meets all the requirements for certification under Rule 23 including (i) the class representatives' claims are typical of those of the other class members; (ii) the class is so numerous it would be impracticable to bring them all before the court; (iii) common questions of law and fact predominate; (iv) plaintiffs and class counsel will adequately represent the class; and (v) a class action is superior to other methods for the fair and adequate resolution of the claims raised by the class, and/or common issues predominate.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Kassondra Baas, Kelly Lofquist, Jeremy Fietz, and Donald Edgar, the Reply Memorandum to be filed in response to any opposition to this motion, and upon any additional evidence and/or argument accepted by the Court in consideration of this motion.

Dated: February 29, 2008

**EDGAR LAW FIRM**

By: _____
Jeremy R. Fietz, Esq.

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CERTIFY CLASS ACTION

## I. INTRODUCTION

In this case, the Plaintiffs allege that they, and many other Dollar Tree employees, were not paid their full wages due to manipulation of computer data used to track and record their hours worked. More specifically, Plaintiffs allege that after hourly employees entered their time in an electronic time punch program, various members of Dollar Tree management made time punch changes to reduce the amount of employee work time reflected in the records before those records were sent to payroll for processing. Plaintiffs hereby move for an order certifying this action to proceed as a class action under FRCP Rule 23.

Plaintiffs dedicated many lengthy and detailed paragraphs of their complaint to describing the Defendant's business operations and Plaintiffs' employment. In these paragraphs Plaintiffs also described how Defendant made use of an employee time-recording system, resulting in the chronic manipulation of computer payroll time records, resulting in the reduction of regular and overtime earnings paid to employees. Because of the detail articulated in Plaintiffs Complaint, and the presumption that factual allegations be taken as true for purposes of class certification, it is respectfully submitted that the Court need only satisfy itself that the case ought procedurally to move forward as a class action. While it is not wholly necessary for class certification purposes, Plaintiffs do herein provide an evidentiary showing establishing that time shaving occurred on a chronic basis at Dollar Tree stores.

Dollar Tree does not dispute that it utilized a computer time-keeping system that allowed the reduction of employee work time before submission to the payroll department for processing. Dollar Tree, rather, espouses that its express written policies require that employees be paid for all time worked. Importantly, however, the company's protestations of good intentions are legally and factually irrelevant to whether or not the hourly workers received less pay than they had a right because of deliberate changes made within the company's time-recording system.

Ultimately, this motion boils down to one undeniable fact: Dollar Tree employees received less pay because of post-entry alterations to their time records (ie. "time shaving"). Dollar Tree records establish that the representative plaintiffs were subject to time shaving,

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                                      07-03108 JSW

deposition testimony establishes that the representative plaintiffs' store manager shaved time from many of his employees, and a Dollar Tree District Manager admits awareness of other time shaving occurring at other stores by other managers. The claims and defenses that arise from the fact that time shaving occurred are common to all class members. Thus, the class enjoys common questions of law and fact. The remaining elements of the Rule 23 inquiry likewise fall into place as discussed below.

## II. APPLICABLE LAW TO CLASS CERTIFICATION

FRCP Rule 23 provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." Rule 23(c)(1). The party moving for class certification has the burden of proving that the class satisfies the prerequisites and a class action set forth in Fed.R.Civ.P. 23(a) and (b). (*Hanon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497, 508).

Although the Court must engage in a rigorous analysis to determine whether all the prerequisites of Rule 23(a) are satisfied (*General Tel. Co. v. Falcon* (1982) 457 U.S. 147, 161, an extensive evidentiary showing is not required. (*Blackie v. Barrack* (9th Cir. 1975) 524 F.2d 891, 901). All that is necessary is sufficient information for the court "to form a reasonable judgment on each requirement." (*Id.*). The court does not examine the merits of the case, and must accept as true the substantive allegations of the class claim. (*Ibid.* at n. 17).

The procedures governing federal class actions under Rule 23 do not permit inquiries into the merits of class claims for relief. In *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156, the United States Supreme Court explained that "nothing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." (*Eisen*, supra, at p. 177).

In *Eisen*, the high court expressed its agreement with *Miller v. Mackey International, Inc.* (5th Cir. 1971) 452 F.2d 424, a case specifically holding that a trial court could not consider the substantive merits of a claim for relief when passing on a motion for a class action. In *Miller*, the Fifth Circuit Court of Appeals emphasized that the propriety of a class action is "basically a

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                                07-03108 JSW

procedural question" and that "[a] suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action." (*Miller*, supra, at p. 427).

Agreeing with *Miller*, the United States Supreme Court concluded in *Eisen*: "'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" (*Eisen*, supra, at p. 178, quoting *Miller*, supra, at p.427). While the merits are indeed strong in this case, this motion appropriately focuses upon the satisfaction the formal requirements of Rule 23.

### III. FACTUAL BACKGROUND

Dollar Tree is a retailer of various products sold to the public and virtually all priced at $1. Plaintiffs were employed by Dollar Tree at one of Dollar Tree's Sonoma county locations, situated in Rohnert Park, California. Plaintiffs, Kassondra Baas and Kelly Lofquist, worked for Dollar Tree as hourly employees (both as "Associates" and as "Assistant Managers") between October 2005 and January 2007, and June 2006 and February 2007, respectively. (Decls. Baas and Lofquist ¶ 3). Like all other hourly employees, the Plaintiffs were required to log into the computer time recording system at the beginning of their shifts, upon taking their breaks and at the end of their shifts. (Decls. Baas ¶ 4; See also Exhibit B to Declaration of Fietz). While they generally attempted to follow these requirements, at times Plaintiffs and other class members would miss/forget a time punch. When the time punch was missed, a punch was added to approximate the actual time worked. (Decl. Baas ¶ 6 and 7; and the Deposition of Richard Tellstrom at pp 122:1-23, 128:13-19, 249:2-250:25, and 280:8-281:11.)[1]

Subsequent to the entry of time by the hourly employees, store management were require to go into the computer time tracking system and input time punches for the hourly employees. (Decl. Baas ¶ 6 and 7; and the Deposition of Richard Tellstrom pp 130:15-131:18 and 136:2-13). When the input time punches were adding a missed punch, the entry may be presumed to be a legitimate one. Similarly, when time punch changes were made to reflect a start time earlier than

---

[1] All references to the Deposition of Richard Tellstrom may be found at Exhibit A to the Declaration of Jeremy R. Fietz.

-3-

1  that punched by the employee, again it may be presumed that such a punch change was
2  legitimate. This is because, at times, employees would start work without punching in and ask
3  that their time punch be amended to reflect their actual work time. (See Deposition of Richard
4  Tellstrom, at pp 299:10-20 and 300:24-301:8).

5  However, when punch changes were made to reduce the amount of time worked, it may
6  be presumed that such changes were not legitimate. The reason for this is there is no plausible
7  explanation for why such a change would be made other than simply to reduce the time
8  submitted to payroll. (Deposition of Richard Tellstrom, at pp 285:2-286:7, 301:9-15, and
9  302:23-305:8).

10  Defendant goes to incredible (and not credible) lengths to try to explain that perhaps
11  someone could forget to punch out and then punch out too late, or punch in too early, etc. The
12  fundamental problem with this theory is that it ignores the application of the laws of physics. In
13  order to make a punch, the employee needs to be there. They cannot punch in from home and
14  then show up at work an hour later. If the punch shows them there at 9 a.m., it means they were
15  there in person at 9 a.m. to make the punch. Similarly, if it shows that they made a punch at 6
16  p.m. it means they were there, in person, at 6 p.m. to make the punch. While a punch change
17  can legitimately recognize that someone was there before they punched in (because they started
18  work without punching in), it cannot reasonably be suggested that an employee punched in a
19  half-hour before they got to work or 20 minutes after they left!

20  Defendants own witness, Dollar Tree District Manager, Richard Tellstrom, explicitly
21  agrees with Plaintiffs' simple logic, rejecting the arguments made by Dollar Tree's attorney.
22  (Deposition of Richard Tellstrom, at pp 285:2-286:7, 301:9-15, and 302:23-305:8).

23  Put simply, the relevant facts are:
24  • Plaintiffs had their time shaved (Decl. Baas ¶10-15; and Deposition of Hansen, at pp.
25      535:17-22, 536:7-8, 536:13-14, 584:5-11, 585:8-9, 590:6-20, 591:10-13, 591:19-21,
26      605:7-606:5, 619:7-14, 624:13-21, 654:1-5, 659:9-14).[2]

---

28  [2] All references to the deposition of John Hansen may be found at Exhibit C to the declaration of Jeremy R. Fietz.

-4-

- Other employees' time has also been shaved by different managers of different stores. (Decl. Baas ¶10-20; and Deposition of Tellstrom pp. 197:9-200:11, 204:12-206:7, 243:7-244:18, 246:1-248:3, and 282:22-25). Defendant's records produced to date include hundreds of instances of time shaving by over a dozen different managers (incl. asst. mgrs.), reducing the wages of approximately 57 hourly employees. While these figures are shocking enough and alone would justify class certification, this is but a fraction of the class as the data represents only 12 stores of the more than 200 Dollar Tree stores in California.

The following notable exchange took place at the deposition of Dollar Tree District Manager Richard Tellstrom at pp 197:9-198:5:

Q.  You are aware that time shaving occurred?
A.  Now I am. Correct.
Q.  Are you aware of to – how many employees in your district were the victims of time shaving?
A.  I have no idea.
Q.  Do you know whether it's more than 10?
A.  No idea. Have 12 stores, each store has probably about 12 to 15 people.
…
Q.  And for how long have you known that time shaving occurred?
A.  Since this has come up.
Q.  Since the filing of the lawsuit?
A.  Yes.

### IV.  THE CLASS' CLAIMS

#### A.  REGULAR AND OVERTIME WAGE CLAIMS

Both the regular as well as the overtime wage claims arise from the same factual allegations -- that post-entry changes were made to the electronic time records. If the time reduced was overtime, that gives rise to unpaid overtime; if the time reduced was from regular hours, the claim is for non-payment of regular wages.

### B. INACCURATE WAGE STATEMENT CLAIM

Defendant did not provide accurate itemized wage statements as required by *California Labor Code* §226. Each wage statement received by the employees indicated the hours as they were sent to payroll. In other words, the wage statements reflected the time recorded after the post-entry reductions were made. As a result, the statements inaccurately reflected the total time and total wages payable in any and all of the pay periods in which post-entry time reductions had taken place. Whether the failure to provide accurate wage statements provides an actionable remedy, and what that remedy might be, is clearly a legal issue shared by the putative class representatives and the putative class in this case.

Lastly, it is worth noting that the remaining causes of action are all similarly dependant upon establishing a failure by Dollar Tree to pay earned wages due to time shaving.

### V. THE CLASS MEETS ALL THE REQUISITES FOR CERTIFICATION UNDER FRCP RULE 23

#### A. SUMMARY OF LAW

The burden is on the party seeking to maintain the action as a class action to establish a prima facie showing of each of the 23(a) prerequisites and the appropriate 23(b) ground for a class action. (*Taylor v. Safeway Stores, Inc.* (10th Cir. 1975) 524 F.2d 263, 270). As has been noted, in evaluating whether plaintiffs have met their burden, **the court should accept the substantive allegations of the complaint as true**. (*Blackie v. Barrack* (9th Cir. 1975) 524 F.2d 891, 901 n. 17).

At the certification hearing, the court looks to the pleadings and may consider extrinsic evidence to determine whether the Rule 23 requirements are met. (*Consolidated Rail Corp. v. Town of Hyde Park* (2d Cir. 1995) 47 F.3d 473, 484). To be certified, a class action must satisfy the four prerequisites of *typicality, commonality, numerosity, and adequacy of representation*. (See Fed.R.Civ.P. 23(a)). Following satisfaction of the 23(a) requirements, a Plaintiff must additionally satisfy one of the criteria contained in FRCP Rule 23(b)– ordinarily either (1) "superiority" or (3)"predominance".

Here, the class meets all the prerequisites of FRCP Rule 23(a), as well as 23(b)(1) and 23(b)(3).

-6-

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                                    07-03108 JSW

### B. STEP ONE: RULE 23(a)

#### 1. The Class Is So Numerous, Individual Adjudication Is Impracticable

> The first requirement under Rule 23 (a) is that the class must be so numerous that joinder of all members individually would be impracticable. The numerosity requirement ensures that the class action device is used only where it would be inequitable and impracticable to require every member of the class to be joined individually. However, 'impracticable' does not mean 'impossible.'" (citations omitted). (*Perry v. U.S. Bank*, 2001 U.S. Dist. LEXIS 25050, at 9, Case No. C-00-1799-PJH).

First, Dollar Tree does not dispute that it employs hundreds of hourly employees throughout California and that it runs over 200 stores state-wide. Second, of the limited records produced to date, which relate to a mere 12 stores, many dozens of employees are apparent victims of time shaving. Whether time shaving occurred more, less, or in the same proportion in other of defendant's stores, (which class wide discovery will show) numerosity is met. (*Ansari v. New York Univ.* (SD NY 1998) 179 FRD 112, 114 ["...courts will find that numerosity requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer;" and *Consolidated Rail Corp. v. Town of Hyde Park* (2nd Cir. 1995) 47 F.3d 473, 483 [numerosity presumed at level of 40 members]).

Moreover, the numerosity requirement is even more readily met where a class contains employees suing their present employer. (*Mullen v. Treasure Chest Casino, L.L.C.* (5th Cir. 1999) 186 F.3d 620, 625). This is because class members may be unwilling to sue their employer individually out of fear of retaliation. (*Id*).

#### 2. Common Questions Of Law Exist Between Plaintiffs And The Class

> The second requirement under Rule 23 (a) is that there must be questions of law or fact common to the class. The fact that there is some factual variation among the class grievances will not defeat a class action– a common nucleus of operative facts is usually enough to satisfy the commonality requirement. (*Perry v. U.S. Bank*, 2001 U.S. Dist. LEXIS 25050, at 10, Case No. C-00-1799-PJH).

The common nucleus of operative facts here is many, many of Dollar Tree's hourly employees received reduced wages due to post-entry alteration of their time records prior to

payroll processing. "So long as class members assert a common complaint and demonstrate they are subject to the same harm, commonality exists." (*Ketchum v. Sunoco, Inc.*, (E.D. Pa. 2003) 217 F.R.D, 354, 357). The pleadings and evidence in this case are crystal clear that the alleged harm applies commonly to each member of the class. The Ninth Circuit construes the commonality prerequisite permissibly. (*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1019). All questions of law and fact need not be common. (*Id.*). Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." (*Id.*).

As set forth in the Third Amended Complaint, common questions include whether Dollar Tree unlawfully failed to pay overtime when due; failed to pay wages when due; whether the itemized wage statements provided by Dollar Tree were inaccurate and, if so, whether such inaccuracy gives rise to compensable damages/penalties and/or injunctive relief; the proper measure of damages and/or restitution sustained by members of the class; whether Dollar Tree's practices constitute unfair business practices; and, whether plaintiffs and the class are entitled to restitution, disgorgement of profits, or other equitable relief.

All of these are common questions of law and/or fact as to each and every class member. While the putative class here enjoys several common questions of law and fact, there "need be only a single issue common to all members of the class" to meet the commonality requirement. (*In re American Medical Systems, Inc.* (6th Cir. 1996) 75 F.3d 1069, 1080). A common nucleus of operative facts alone is usually enough to satisfy the commonality requirement of Rule 23(a)(2). (*Rosario v. Livaditis* (7th Cir. 1992) 963 F.2d 1013, 1017-1018; and *Hanlon v. Chrysler* (9th Cir. 1998)150 F.3d 1011, 1019 [common question requirement can be satisfied either by a shared legal issue with divergent factual predicates or by a common core of salient facts with disparate legal remedies.]). The most obvious shared legal issue here is whether the post-entry reductions in employee time give rise to damages under the Labor Code or other California law.

### 3. Plaintiffs' Claims Are "Typical" Of The Class

> The third requirement under Rule 23 (a) is that the claims or defenses of the class representatives must be typical of the claims or defenses of the class. Typicality focuses on the similarity between the named plaintiffs'

-8-

> legal and remedial theories and the legal and remedial theories of those whom they purport to represent. In practice, the commonality and typicality requirements of Rule 23 'tend to merge.' (*Perry v. U.S. Bank*, 2001 U.S. Dist. LEXIS 25050, 11-12, Case No. C-00-1799-PJH).

Put another way:

> the typicality requirement is satisfied if the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. Even pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories. (*Ketchum v. Sunoco, Inc.*, supra, 357).

Under these standards, the claims raised by Plaintiffs are typical of the class as a whole. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory as the class's claims. (*Rosario, supra*, 963 F.2d at 1018). The claims of the class representatives need not even be identical to the claims of other class members, but the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." (*General Tel. Co. of Southwest v. Falcon* (1982) 457 US 147, 157).

Here, Plaintiffs worked as hourly employees of Dollar Tree during the class period. Plaintiffs' time records were subject to post-entry reduction before being sent to payroll on at least one occasion. Since failure to pay wages and overtime due to such reductions are the root claims of the class as a whole, Plaintiffs' claims are typical.

### 4. Plaintiffs And Their Counsel Are Adequate Class Representatives

The fourth requirement under Rule 23 (a) is adequacy of representation. The court must find that the plaintiffs' counsel is adequate, and that the named plaintiffs can fairly and adequately protect the interests of the class. Legal adequacy is determined by resolution of two questions– whether the named plaintiffs and their counsel have any conflicts with class members, and whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. (*Perry v. U.S. Bank*, 2001 U.S. Dist. LEXIS 25050, 13, Case No. C-00-1799-PJH).

Plaintiffs will fairly and adequately represent the interests of the class. (See Decls. Baas and Lofquist). Plaintiffs have no conflicts with the class, are determined to see the class's claims

-9-

vindicated, and has retained class counsel competent in managing wage and hour claims and a multitude of other complex and class actions. Notably, within the last 12 months, counsel for the putative class have been approved by the Northern District as class counsel in *two* employment law cases. (Decls. Fietz and Edgar).

### C.  STEP TWO:  RULE 23(b)

Once a plaintiff has satisfied the Rule 23 (a) **preliminary requirements** of numerosity, commonality, typicality, and adequacy of representation, he must demonstrate that the proposed class action qualifies under **one** of the sub-sections of Rule 23 (b). (*Perry v. U.S. Bank*, 2001 U.S. Dist. LEXIS 25050, 14, Case No. C-00-1799-PJH). In this case, Plaintiff seeks certification under Rule 23 (b)(1) and Rule 23 (b)(3). Though Plaintiff can satisfy both elements, it is sufficient for certification that he satisfy only one.

#### 1.   Class Adjudication Is Superior To All Other Forms

Under Rule 23 (b)(1), a Plaintiff must establish, "that class action treatment is the preferable method of handling a case." (*Id.*). This is shorthand for the actual rule, which states that Class Actions are appropriate when

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, **or**
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Rule 23 (b)(1)(A-B).

Basically, what the so-called Superiority element represents is the principal that Class adjudication is appropriate when prosecution of individual actions might lead, from case to case, to contradictory results, prejudicing the interests of either the defendant or members of the plaintiff's class. "To illustrate: separate actions by individuals against a municipality to declare a bond issue invalid or condition or limit it, to prevent or limit the making of a particular appropriation or to compel or invalidate an assessment, might create a risk of inconsistent or varying determinations." (See *Notes of Advisory Committee on 1966 Amendments*). Though the

-10-

facts of liability are no different, different Courts adjudicating the matter might reach conflicting conclusions. Consequently, "[a]ctions by or against a class provide a ready and fair means of achieving unitary adjudication." (*Perry v. U.S. Bank*, 2001 U.S. Dist. LEXIS 25050, 14, Case No. C-00-1799-PJH).

It should be obvious in the case at bar that the consequences of varying outcomes are significant both for Plaintiff and Defendant. For example, one court may conclude that Dollar Tree is not responsible for the reduced time and unpaid compensation, whereas another court may conclude that they are indeed responsible for the payment of wages for all time worked by their employees. Indeed, if this case is not certified Dollar Tree could easily find itself subject to conflicting Orders from various courts and the California Labor Commissioner. This risk alone warrants certification so that the determination can be made once and for all and will bind all of the parties. (*Amchem Products, Inc. v. Windsor* (1997) 521 US 591, 614 [Rule 23(b)(1)(A) is satisfied "where the party is obligated by law to treat the members of the class alike, or where the party must treat all alike as a matter of practical necessity."]).

A single action can and will lead to a determination of liability and damages, *or none at all*. Whether the issue resulted in a determination of liability or no liability, the issue would be put to rest. Conflicting outcomes would be avoided and, perhaps more significantly, justice itself preserved from self-contradiction and public reproach.

Moreover, the *Labor Code* sections in issue are *minimum labor standards*. They are standards on which the well-being of the worker and the worker's family depends, and, as such, on which *all* of California society depends. When it is violated on an individual basis it is a threat to many, and the employer's successful violation only encourages further violations. When it is violated on so massive a scale as alleged by Plaintiffs, the threat posed to California's people is even greater. Attacking the violation individually simply does not address the problem. When the violation is the same for all Defendant's employees, the only reasonable, and the most superior, method of adjudication is *not* an individual action, *nor* an individual administrative claim, but *class wide adjudication*, so that the State's important public policy, and the rights of

-11-

hundreds of workers and their families, can be vindicated, the violation corrected and the law enforced. As noted by Judge Teitelbaum in *Katz v. Carte Blanche Corp.*, 53 F.R.D. 539, 543:

> [I]t must be remembered that the foundation of a class action is that it is "a semi-public remedy administered by the lawyer in private practice". (Kalven and Rosenfield, The Contemporary Function Of The Class Suit, 8 U.Chi.L.Rev. 684, 717 (1941)). It is often the only practical effectuation of remedial provisions of legislative policies. The action of Federal agencies entrusted with the enforcement of public policy is limited to compelling compliance with a statute. **Private litigation, particularly in the form of a class action, serves to supplement administrative action in furthering the public policy.** (See *J. I. Case v. Borak* (1964), 377 U.S. 426, 84 S. Ct. 1555, 12 L. Ed. 2d 423).

There can be no more appropriate use of the Class Action form than in the prosecution of a case involving the violation of important California public policies, impacting the rights of hundreds of individuals who did not actually receive the wages they earned.

### 2. Issues Common To The Class Predominate Over Individual Issues

*Alternatively*, "under Rule 23 (b)(3), plaintiff must establish...that the questions common to the class predominate over the questions affecting individual members" if he is to satisfy the second stage certification inquiry requirement. (*Perry v. U.S. Bank*, 2001 U.S. Dist. LEXIS 25050, 14, Case No. C-00-1799-PJH).

Clearly, if Plaintiffs satisfy the requirement for Certification in the form of Rule 23 (b)(1), Plaintiff need *not* concern himself with Rule 23 (b)(3). However, as noted earlier in this brief, Plaintiff *does* indeed satisfy the alternative requirement represented by clause (b)(3).

As stated by the Advisory Committee,

> Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. The Court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device. See *Notes of Advisory Committee on 1966 Amendments*.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                               07-03108 JSW

To illustrate, the Committee noted:

> A fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material **variation** in the representations made or in the kinds of degree of reliance by the persons to whom they were addressed. *Id*.

The case at bar is clearly analogous to the illustration of the action suitable for class treatment provided by the Advisory Committee. The case at bar arises from the erasure/reduction of time made possible by the defendant's computer time tracking system. This is a practices to which all of the hundreds of Dollar Tree hourly employees were potentially subject. The end result for each of these employees whose time was reduced was the same: the failure to receive earned wages. This is not a case where the putative class members were each harmed in a *different* way, by a *different* cause, attributable in some way to the *same* defendant. The harm alleged by Plaintiffs resulted from the same (or similar) use of the same time-tracking payroll system. The use of the time erase/adjust function (and whether Dollar Tree is liable to employees whose time was reduced) clearly predominate over all other issues.

Also relevant is the fact that (i) there would be no difficulty in maintaining this as a class action because the claims of each class member are relatively simple to adjudicate, (ii) this forum is appropriate since Dollar Tree employed hourly employees in this District, and (iii) because class members would likely have little interest in individually controlling the prosecution of separate actions since the amount in controversy for each class member will vary and in some cases may be too small to warrant individual litigation at all.

Moreover, it is very likely that currently employed Dollar Tree hourly employees may fear retaliation by Dollar Tree, in one form or another, should they attempt to bring their own individual actions.

In sum, a case based upon alleged failure to pay overtime and/or commissions due is exactly the type of action appropriate for certification as a class action. (See e.g., *Romero v.*

*Producers Dairy Foods, Inc.* (E.D. Cal. 2006) 235 F.R.D. 474 (E.D.Cal.,2006)[certifying class of over 100 route drivers]; *Chavez v. IBP, Inc.* (E.D. Wash. 2002) 2002 WL 31662102, 4 [individualized issues did not predominate in action for unpaid wages]; and *Ladegaard v. Hard Rock Concrete Cutters, Inc.* (N.D. Ill 2000) 200 WL 1774091, 7 [common issues predominate in action for unpaid wages]). If Dollar Tree is ultimately found liable for failing to pay wages due, this case comes down to nothing more than a mechanical computation of the sums owed to each class member.

> "In cases where the fact of injury and damage breaks down in what may be characterized as 'virtually a mechanical task' 'capable of mathematical or formula calculation,' 'the existence of individualized claims seems to offer no barrier to certification on grounds of manageability.'" (*Windham v. American Brands, Inc.*, (4th Cir. 1977) 565 F.2d 59, 68).

Class actions that focus on common employer practices such as these (rather than individual employee responses) are appropriate for class certification under Rule 23(b)(3). (See *Newsome v. Up-To-Date Laundry, Inc.*, (d. Md. 2004) 219 F.R.D. 356, 365).

Defendants on class certification often argue that individualized damage questions will predominate over common questions of liability and injury in fact. It is well established, however, that individual proof of damage will not preclude a finding of predominance or otherwise defeat class certification. (See *Blackie v. Barrack* (9th Cir. 1975) 524 F. 2d 891, 905; *Winkler v. DTE, Inc.* (D. Ariz. 2001) 205 F.R.D. 235, 244; and Rules Adv. Comm. Notes to 1966 Amendments to Rule 23, 39 F.R.D. 69 (1966)). Individual questions of damages are no barrier to class certification if "computing individual damages will be virtually a mechanical task." (*Blackie,* supra (4th Cir. 1977) 524 F. 2d 59, 68; and *O'Keefe v. Mercedes-Benz USA, LLC* (E.D. Pa. 2003) 214 F.R.D. 266, 292).

This case is not just well suited to the application of formulaic calculations, but, even more efficient than that, it is subject to reliance on exact database records maintained by Dollar Tree. Indeed, Dollar Tree has admitted that it has the capacity to total, with exactitude through its computer database, what each class member's potential damages are. Because the amount of

damages of each class member is subject to exact and virtually instant availability, damage calculations will not overshadow the myriad of common liability issues or predominate over the common issues.[3] (*In re United Energy Corp. Solar Power Modules* (C.D. Cal. 1988) 122 F.R.D. 251, 254).

Defendant will no doubt argue that the case requires an individualized inquiry as to the particular potential reasons that time might have been removed. This is a smokescreen. If an employer could erase time from employee records and then say, the employer "might be a good reason" in order to escape liability, labor laws would be meaningless. Their own witness agreed that there is *no good reason* to subtract time from a punch made by an employee. In any event, a jury is able to decide for the whole class whether or not "there might be a good reason" for such time deductions or whether such deductions may be generally treated as illegitimate.

## VI.  CONCLUSION

The putative class meets all the requirements of Rule 23. The post-entry reduction of time (i.e. time shaving) in the employee time records is admitted by Dollar Tree employees, including the current District Manager of the 12 store district in Northern California. Such claims as those made in this action are exactly the type of claim ideal for determination on a class-wide basis.

For all the reasons set forth herein, plaintiff respectfully requests an Order certifying the class and to set a hearing for determination of how best to disseminate class notice.

Dated: February 29, 2008          EDGAR LAW FIRM

By: _____
Jeremy R. Fietz, Esq.

---

[3] Federal courts have repeatedly found that common liability issues predominate over individual damage issues in class actions for unpaid wages. (*See, E.g., Chavez v. IBP, Inc.* (E.D. Wash. 2002) 2002 WL 31662302, 4 (finding individual damage issues did not predominate in class action for unpaid wages where individualized damages could be calculated using formula); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, (N.D. Ill. 2000) 2000 WL 1774091, 7 (finding common issues of liability predominated over individual damage issues in class action for failure to pay wages for hours worked); *Franks v. O'Connor Corp.*, (E.D. Pa. 1993) 1993 WK 76212, 7 (finding common issues predominated over individual issues where employer had wage-skimming scheme that affected each class member and the only divergence was the extent and calculation of damages.

15