1   MAUREEN E. MCCLAIN (State Bar No. 062050)
    Email: mcclain@kmm.com
2   ALEX HERNAEZ (State Bar No. 201441)
    Email: hernaez@kmm.com
3   KAUFF MCCLAIN & MCGUIRE LLP
    One Post Street, Suite 2600
4   San Francisco, California 94104
    Telephone:  (415) 421-3111
5   Facsimile:    (415) 421-0938

6   Attorneys for Defendant
    DOLLAR TREE STORES, INC.

7

    BETH HIRSCH BERMAN (VA Bar No. 28091)
8   Email: bberman@williamsmullen.com
    WILLIAMS, MULLEN
9   999 Waterside Drive
    1700 Dominion Tower
10  Norfolk, VA 23510
    Telephone:  (757) 629-0604
11  Facsimile:    (757) 629-0660

12  *Pro Hac Vice* Attorneys for Defendant
    DOLLAR TREE STORES, INC.

13

14                  UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16

17  KASSONDRA BAAS and KELLY LOFQUIST,        CASE NO.  C 07-03108 JSW
    individually and on behalf of all others
18  similarly situated,                       **DEFENDANT DOLLAR TREE
                                              STORES, INC.'S MEMORANDUM
19                  Plaintiffs,               OF POINTS AND AUTHORITIES IN
                                              OPPOSITION TO PLAINTIFFS'
20  v.                                        MOTION FOR CLASS
                                              CERTIFICATION**
21  DOLLAR TREE STORES, INC.,
                                              **DATE:**      April 4, 2008
22                  Defendant.                **TIME:**       9:00 a.m.
                                              **DEPT.:**     Crtrm. 2, 17th Floor
23                                            **JUDGE:**     Hon. Jeffrey S. White

24                                            **COMPLAINT FILED:** June 13, 2007
                                              **TRIAL DATE:** No date set.
25

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                CASE NO. C 07-03108 JSW

1

# TABLE OF CONTENTS

2

Page

3    SUMMARY OF ARGUMENT ....................................................................................... iv

4    I.    STATEMENT OF FACTS.................................................................................1

5
      A.    Dollar Tree's Payroll Policies ........................................................1
6

7    II.    ARGUMENT.......................................................................................5

8          A.    Plaintiffs Will Be Unable To Prove The Necessary Pre-Requisites
                 For This Action To Be Certified As A Class Action. ...................................5
9

10         B.    Plaintiffs Do Not Satisfy the Requirements of Rule 23(a) ...........................5

11                1.    Commonality Is Absent Among The Proposed Class
                        Members.......................................................................6
12

13                2.    Plaintiffs' Claims Are Not Typical Of The Proposed Class Of
                        Hourly Employees.............................................................8

14
                  3.    The Plaintiffs Do Not Fairly And Adequately Protect The
15                      Interests Of Other Members Of The Class....................................10

16                      a.    The Plaintiffs' Counsel Is In Conflict With The Class...........10

17                      b.    The Plaintiffs' Interests Are In Conflict With The Class .......12
18

19                4.    Plaintiffs Do Not Satisfy The Requirements Of Rule 23(b).............13

20    III.    CONCLUSION .................................................................................15

21

22

23

24

25

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          CASE NO. C 07-03108 JSW

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## FEDERAL CASES

4    *Abed et al. v. A.H. Robins Company, et al.*
     (*In re Northern District of California, Dalkon Shield IUD Products Liability*
5    *Litigation*), 693 F.2d 847 (9th Cir. 1982) .................................................................15

6    *Amchem Products, Inc. v. Windsor,*
     521 U.S. 591 (1997) ..................................................................................................5
7

8    *Ames v. State Bar,*
     8 Cal.3d 910 (1973)..................................................................................................11
9
     *Baby Neal v. Casey,*
10   43 F.3d 48 (3d Cir. 1994)...........................................................................................6

11   *Cal-Pak Delivery, Inc. v. United Parcel Serv.,*
     52 Cal.App.4th 1 (1997).............................................................................................10
12

13   *Castle v. Wells Fargo Financial, Inc.,*
     2008 WL 495705 (N.D. Cal. Feb. 20, 2008) (Illston, J.).....................................iv, 7, 8
14
     *Cornn v. United Parcel Service, Inc.,*
15   No. 2005 WL 2072091 (N.D. Cal. Aug. 26, 2005)........................................................8

16   *Crawford v. Honig,*
     37 F.3d 485 (9th Cir. 1994)......................................................................................12
17

18   *Eisen v. Carlisle & Jacquelin,*
     417 U.S. 156 (1974) ...................................................................................................5
19
     *General Tel. Co. of the Southwest v. Falcon,*
20   457 U.S. 147 (1982) ...................................................................................................8

21   *Hanlon v. Chrysler Corp.,*
     150 F.3d 1011 (9th Cir. 1998)............................................................................ passim
22

23   *Hanon v. Dataproducts Corp.,*
     976 F.2d 497 (9th Cir. 1992).............................................................................5, 8, 13
24
     *Huston v. Imperial Credit Commercial Mortgage Invest. Corp.,*
25   179 F.Supp.2d 1157 (C.D. Cal. 2001) .....................................................................11

26   *In re County of Los Angeles,*
     223 F.3d 990 (9th Cir. 2000).....................................................................................11
27

28

- ii -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

CASE NO. C 07-03108 JSW

## TABLE OF AUTHORITIES (cont'd)

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978)......................................................................................10

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,
  Inc.*, 244 F.3d 1152 (9th Cir. 2001)............................................................................14

*Mateo v. M/S Kiso*,
  805 F.Supp. 761 (N.D. Cal. 1991)..............................................................................14

*Moreno v. Autozone, Inc.*,
  2007 WL 4287517, *5 (N.D. Cal. Dec 6, 2007)....................................................11, 12

*Van Allen v. Circle K Corp.*,
  58 F.R.D. 562 (C.D. Cal. 1972)..................................................................................13

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001).............................................................................13, 14

## FEDERAL RULES

Civil Local Rule
  11-4(a)(1).....................................................................................................................11

Federal Rules of Civil Procedure
  23 .........................................................................................................................iv, 5
  23(a) .......................................................................................................................5, 6
  23(a)(4)......................................................................................................................10
  23(b) ......................................................................................................................5, 13
  23(b)(1).......................................................................................................................5
  23 (b)(2).......................................................................................................................5
  23(b)(1)(A)...........................................................................................................13, 14
  23(b)(3).......................................................................................................................5

## CALIFORNIA CASES

*Global Minerals & Metals Corporation v. Superior Court*,
  113 Cal.App.4th 836, 851 (2003)...............................................................................13

*Flatt v. Sup.Ct.*,
  9 Cal.4th 275 (1994)...................................................................................................11

*Richmond v. Dart Industries, Inc.*,
  29 Cal.3d 462 (1981)..................................................................................................13

## CALIFORNIA STATUTES

Rules of Professional Conduct of the State Bar of California
  Rule 3-310(c)(3) ........................................................................................................11

- iii -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          CASE NO. C 07-03108 JSW

1

## SUMMARY OF ARGUMENT

2          This lawsuit alleges that Defendant has wrongfully manipulated all hourly

3    employee time records **throughout the state of California**. At issue here is whether

4    class action treatment is appropriate. It is not. Dollar Tree operates more than 220

5    stores throughout California. But Plaintiffs worked in only a single store, and they have

6    narrow evidence of wrongdoing primarily in two stores, which are both located within the

7    same 12-store district (District No. 460). Absent any supporting evidence, Plaintiffs

8    cannot maintain a class action by limited anecdotal observation. Evidence suggesting

9    that two or three individual Store Managers in the same district altered time entries

10   simply cannot be used to bootstrap a state-wide class action involving thousands of

11   employees at hundreds of different stores. *See Castle v. Wells Fargo Financial, Inc.*,

12   2008 WL 495705 (N.D. Cal. Feb. 20, 2008) (Illston, J.). To the contrary, a statistical

13   analysis prepared by Robert Crandall shows no evidence of any systematic adjustments

14   at any level. And this is confirmed by the evidence Baas cites. *See* Crandall Decl. at Ex.

15   A (¶¶ 30-32); Anthony Decl. at ¶ 4; Objections to Evidence at ¶ 22.

16          The proposed class is also not appropriate for certification because the

17   interests of the Assistant Managers clash with those of the hourly employees under their

18   supervision. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

19   Assistant Managers are responsible (along with Store Managers) for reviewing time

20   records and ensuring their accuracy. Since Plaintiffs and other Assistant Managers were

21   charged with the responsibility of ensuring the accuracy of subordinate hourly

22   employees' time records, they cannot adequately represent a combined class of all

23   hourly employees. Additionally, counsel for Plaintiffs has a conflict. The Edgar Law Firm

24   simultaneously represents John Hansen ("Hansen") in a wage and hour lawsuit against

25   Dollar Tree pending before this Court. Hansen is the very same Store Manager Plaintiffs

26   say manipulated their time records. Already, Plaintiffs have given sworn testimony that

27   cannot be reconciled with Hansen's sworn testimony. In sum, class certification is not

28   appropriate under Rule 23.

- iv -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          CASE NO. C 07-03108 JSW

**I.     STATEMENT OF FACTS**

Dollar Tree Stores, Inc. ("Dollar Tree") is a public company with its headquarters in Chesapeake, Virginia.  It is a single price point discount variety store retailer.  Dollar Tree operates over 3,000 retail locations nationwide including approximately 220 stores in California.  *See* Declaration of Paula Brady at ¶ 3.  Dollar Tree's California stores are divided into 24 separate districts.  Each district is comprised of approximately 10-12 stores.  *See* Declaration of David McDearmon at ¶ 6.  Plaintiffs are both former employees of Dollar Tree.  They worked from October 2005 through February 2007 as hourly (i.e., non-exempt) Assistant Managers at a single store in Rohnert Park, California (Store No. 1868).  Compl. at ¶¶ 12-15.

**A.     Dollar Tree's Payroll Policies.**

Dollar Tree's written payroll and wage policies comply with California and federal law.  Dollar Tree requires its employees to record accurately the hours they work, including the actual time taken for their meal breaks.  *See* Brady Decl. at ¶ 7, Ex. B.  Store Managers and Assistant Managers were trained in Dollar Tree's policies, and were required to communicate these policies to all store hourly employees.  *See* McDearmon Decl. at ¶¶ 7-9.  Dollar Tree's employees, including Plaintiffs, were expected to comply fully with these policies.  *Id.*  The applicable Wage Orders are also posted in each Dollar Tree retail store for all employees to read.  *See* McDearmon Decl. at ¶ 13.

All hourly employees are issued unique employee numbers and access codes, which they are prohibited from sharing with others for security reasons.  *See* Declaration of Steve Pearson at ¶¶ 5 & 7.  Using this information, time may be entered electronically both at the cash register terminals and on a computer kept in the store's office.  *Id.* at ¶ 5.  These devices are connected to a time tracking system known as Compass.[1]  *Id.* at ¶ 4.  All hourly employees are to use Compass to record every start and end of shift, and all breaks.  *See* Brady Decl. at ¶¶ 7 and 8, Exs. B and C.  Since

---

[1] Dollar Tree began using Compass to track employee time on or about June, 2006.  Prior to that, Dollar Tree used a time keeping system called Fastech.  *See* Pearson Decl. at ¶ 9.

- 1 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          CASE NO. C 07-03108 JSW

1  employees sometimes neglect to clock in or out and occasionally the system

2  malfunctions, Assistant and Store Managers are able to adjust the time records for any

3  employee in their store other than themselves. *See* Pearson Decl. at ¶ 6.

4  When any correction is made, Compass maintains a footprint of the original

5  entry, identifies the correction, identifies who made the correction, and shows the date

6  and time the correction was made. *Id.* at ¶ 8. Dollar Tree can generate, on a store-by-

7  store level, "punch audit reports" from Compass which show each of the foregoing trails

8  for each hourly employee. *Id.* If a time entry is subsequently changed, then more than

9  one punch will appear for the same type of entry (e.g., two entries for a start shift). Each

10  entry will have a trail as to the time and date when it was made and by whom. However,

11  the punch audit reports do not identify why a change was made. As a result, it is

12  impossible to discern from them whether a change was made to correct an error or if it

13  was made in contravention of Dollar Tree policy. Hansen Dep. 635:9-23. Cruz Dep.

14  454:1-455:15. Plaintiffs have asserted that they intend to rely on the punch audit reports

15  to establish their case. Berman Decl. at ¶ 3, Ex. A (p. 5 lines 9-14). But Plaintiffs have

16  **no** evidence, either contemporaneous or otherwise, identifying the purpose of any

17  particular change recorded on any particular punch audit report.

18  **B.  Statistical Data from Punch Audit Reports.**

19  Plaintiffs allege that Dollar Tree made adjustments to reduce overall payroll

20  hours. *See* Opening Brief at 4:5-9. Yet for the entire putative class, less than one

21  percent of employee days had time adjusted so as to result in a net loss of time.

22  Crandall Decl. at Ex. A (¶ 3). Thus, even if all adjustments which led to a loss of time

23  were improper (and they were not), the adjustments would affect fewer than one percent

24  of the employee days. The Fastech data shows that sixty-five percent of all employees

25  had no days where an edit resulted in a reduction in hours. *Id.* at Ex. A (¶ 17). Of the

26  thirty-five percent who had edits that resulted in a loss, the frequency of negatively

27  edited days does not reach 1% until the 80th percentile. *Id.* The Compass data shows

28  that seventy percent of employees had no edit reductions to his or her time records. *Id.*

- 2 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CASE NO. C 07-03108 JSW

1    at Ex. A (¶ 18). Of that thirty percent that did, the typical employee did not have negative

2    edits that exceeded 1% until the 86th percentile. *Id.* The mean for edits resulting in a

3    loss of time is less than one percent of all employee days. *Id.* at Ex. A (¶ 17). Such

4    records demonstrate not only that Dollar Tree did not improperly alter time records but

5    also that Plaintiffs' claims, if true, are neither typical nor common.[2]

6         Second the Plaintiffs allege that Dollar Tree made adjustments to subtract

7    time worked to avoid payment of overtime wages. In the Fastech data, only eighteen

8    percent of the negative edits caused an eight-plus hour day to become a day of eight

9    hours or less. Id. at Ex. A (¶ 25). This means that only 0.12 percent of employee days

10   were adjusted to less than eight hours. *Id.* In the Compass data, only twenty percent of

11   the negative edits caused an eight-plus hour day to become a day of eight hours or less.

12   *Id.* Thus, negative overtime adjustments affected fewer than 0.08 percent of the

13   employee days. *Id.*

14        Lastly, the Plaintiffs allege that Dollar Tree made adjustments to subtract

15   time worked to fewer than five hours to deprive employees of an entitlement to meal

16   periods. In the Fastech data only twelve percent of the negative edits adjusted an

17   employee's time below five hours. *Id.* This means only 0.08 percent of employee days

18   were adjusted to less than five hours. *Id.* Under the Compass data, only seven percent

19   of the negative edits resulted in an employee's time falling below five hours. *Id.* Thus,

20   only 0.02 percent of employee days were edited to reduce an employee's time to under

21   five hours. *Id.*

22        The statistics clearly show that there is no state-wide policy to deprive

23   employees of time worked for any reason. Of the less than one percent of employee

24   days edited, seventy percent of the edits have no effect on either entitlements to meal

25   breaks or overtime wages. *Id.* Moreover, the number of employees whose time was

26

27

28   [2] Additionally, not all time edits are negative. Adjustments that actually added time to the
     employee's punches were more common. Crandall Decl. at Ex. A (¶ 3).

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS         CASE NO. C 07-03108 JSW

1   negatively adjusted, for whatever reason, is so small that there is no commonality across
2   the proposed class.

3          Even when reviewing the punch audit reports for stores in the same district
4   as Store No. 1868, there is no pattern of adjusting time records downward, as the data
5   demonstrates. *Id.* at Ex. A (¶¶ 26-32). Indeed, some stores in the same district as the
6   Plaintiffs' store had no corrections to employee's time, while others had corrections, but
7   none that would affect overtime compensation, or if affected, so infrequently and in such
8   small quantities that no improper purpose could be inferred. *Id.* at Ex. A (¶¶ 26-29).
9   Moreover, the evidence shows that Dollar Tree paid overtime to employees
10  appropriately. Dollar Tree did not discipline the Store Managers for incurring overtime.
11  *See* Brady Decl. at ¶ 9.

12         Plaintiffs' papers repeatedly suggest evidence of state-wide violations.
13  *E.g.*, Opening Brief at 1:19 ("chronic" violations); 13:11-13. Yet these claims are
14  universally made without citation. Nor is the claim that there are "hundreds of instances
15  of time shaving by over a dozen different managers" supported by the record. Opening
16  Brief at 5:1-8. While "Exhibit C" to the Baas Declaration purports to show a "practice"
17  among 12 stores in Northern California, only six stores are reflected on Exhibit C and the
18  great majority of cited punch edits are from two stores (Nos. 1868 and 2262) under three
19  store managers, Burger, Hansen and Cruz. Indeed, of the 202 entries depicted on
20  Exhibit C, only 13 are from stores other than 1868 and 2262. See Anthony Decl. at ¶ 4;
21  Objections to Evidence at ¶ 22; Crandall Decl. at Ex. A (¶ 31). Moreover, as explained
22  by Mr. Crandall, the data Baas relies upon only underscores the conclusions reached by
23  Dollar Tree—i.e., the most common experience for employees is to experience no
24  negative time edits, and those who did experience such edits did so very infrequently.
25  See Crandall Decl. at Ex. A (¶¶ 30-31).

26
27
28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1   **II.**   **ARGUMENT**

2       **A.**   **Plaintiffs Will Be Unable To Prove The Necessary Pre-Requisites For This Action To Be Certified As A Class Action.**

3           "In determining the propriety of a class action, the question is not whether

4 the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but

5 rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417

6 U.S. 156, 178 (1974) (internal citation omitted). A class action may be certified only if

7 "(1) the class is so numerous that joinder of all members is impracticable; (2) there are

8 questions of law and fact common to the class; (3) the claims or defenses of the

9 representative parties are typical of the claims or defenses of the class; and (4) the

10 representative parties will fairly and adequately protect the interests of the class." Fed.

11 R. Civ. P. 23(a). In addition to satisfying these prerequisites, parties seeking class

12 certification must show that the action is maintainable under Rule 23(b)(1), (2) or (3).

13 *See* Rule 23(b); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

14 Rule 23(b)(3) permits class actions when "the court finds that the questions of law or fact

15 common to the members of the class predominate over any questions affecting only

16 individual members, and that a class action is superior to other available methods for the

17 fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

18           The party seeking class certification bears the burden of establishing that

19 all requirements of Rule 23 have been met. *See Hanon v. Dataproducts Corp.*, 976 F.2d

20 497, 508 (9th Cir. 1992). The merits of the class members' substantive claims are

21 generally irrelevant to this inquiry. *Eisen*, 417 U.S. at 177-78. However, courts are "at

22 liberty to consider evidence which goes to the requirements of Rule 23 even though the

23 evidence may also relate to the underlying merits of the case," and a court may only

24 certify a class after a "rigorous analysis" as to whether the requirements have been

25 satisfied. *Dataproducts Corp.*, 976 F.2d at 509 (internal quotations omitted).

26       **B.**   **Plaintiffs Do Not Satisfy the Requirements of Rule 23(a).**

27           Under Rule 23(a), the party seeking class certification must establish:

28 (1) that the class is so large that joinder of all members is impracticable (i.e.,

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1   numerosity); (2) that there are one or more questions of law or fact common to the class

2   (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e.,

3   typicality); and (4) that the class representatives will fairly and adequately protect the

4   interests of other members of the class (i.e., adequacy of representation). *See*

5   Fed.R.Civ.P. 23(a).  The parties do not dispute the numerosity issue.

6                    **1.     Commonality Is Absent Among The Proposed Class Members.**

7                The requirement of commonality "seek[s] to assure that the action can be

8   practically and efficiently maintained [as a class action]." *Baby Neal v. Casey*, 43 F.3d

9   48, 56 (3d Cir. 1994).  Commonality focuses on the relationship of common facts and

10  legal issues among class members.  "Class treatment makes no sense if there are no

11  common issues; the trial court would gain nothing but logistical headaches from the

12  combination of the cases for trial." *Id.* at 55.

13               To demonstrate commonality, plaintiffs must show at least one significant

14  issue of fact or theory of law common to the entire class. *See Hanlon*, 150 F.3d at 1020.

15  In an attempt to establish commonality, Plaintiffs argue, **without citation to any**

16  **evidence**, that "many, many of Dollar Tree's hourly employees received reduced wages

17  due to post-entry alteration of their time records prior to payroll processing."  *See*

18  Opening Brief at 7:27-28.  Yet nothing supports this assertion.  To the contrary, less than

19  1% of all hourly employee days were edited to have time reduced for any reason.

20  Crandall Decl. at Ex. A(¶ 3).  Stated another way, on any given day, more than 99% of

21  Dollar Tree's hourly employees in California had no negative adjustment to their time.

22  Moreover, there is no evidence that time records were altered improperly in any store

23  other than stores 1868 and 2262.  Consequently, Plaintiffs can point to no common fact

24  to support their claim that Dollar Tree improperly altered time clock records to reduce

25  overall payroll on a state-wide basis.

26               If Plaintiffs' are correct that Dollar Tree's Compass system enabled

27  management on a state-wide basis to reduce employee time to deprive them of time

28  worked, then there should be state-wide evidence of time adjustments reducing the

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 6 -

1    amount of time that employees worked.  In fact, the extremely low number of time

2    corrections state-wide suggests the opposite – Dollar Tree's use of the Compass system

3    is remarkably accurate in properly recording and capturing all time worked. As shown

4    above, for the entire putative class, less than 0.7 percent of employees' days had time

5    adjusted negatively. *Id.* at Ex. A (¶ 10).  The fact that less than 0.7 percent of employee

6    days time entries were altered does not suggest that Dollar Tree has a policy of

7    depriving its employees of payment for all time worked.  The median employee had his

8    or her time adjusted zero percent of the time. *Id.* at Ex. A (¶¶ 17-18).  In other words,

9    the "most common" employee has experienced no negative time adjustments. *Id.* at Ex.

10    A (¶ 19).  It strains reason to certify a class of thousands when only 0.7 percent of

11    employee days were negatively adjusted.

12         Moreover, isolated findings of alterations will not be applicable class wide.

13    There are many proper reasons for manual adjustments to time.  Hansen Dep. 274:11-

14    275:5.  Because it is not possible to tell from Compass (or Fastech) alone the reason

15    time was adjusted, each adjustment will have to be examined on an individual basis.

16    See, e.g., Hansen Dep. 286:15-287:21; 586:16-21; 587:16-24; 605:7-606:19; 651:14-

17    652:8.  If each time alteration will have to be examined, the fact the time entry was

18    adjusted does nothing to establish commonality across the entire putative class.

19         For example, the plaintiffs in *Castle* sought to certify a nationwide class of

20    Wells Fargo employees based upon the allegation that Wells Fargo utilized a

21    timekeeping system which allowed management to deprive the hourly employees of

22    overtime compensation by manipulating time records. *See Castle*, 2008 WL 495705 at

23    5.  The plaintiffs submitted declarations from individual employees all stating that they

24    were not paid for some amount of overtime worked, and that they were pressured by

25    their managers not to record overtime hours.  Judge Illston found that if the declarants

26    were able to prove the facts in their declarations, they would have strong individual

27    claims.  However, commonality did not exist because "plaintiffs have not identified any

28    company-wide policy or practice to deny overtime and thus have failed to show that the

- 7 -

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS      CASE NO. C 07-03108 JSW

1  various Wells Fargo employees are similarly situated for purposes of class certification."

2  *Id.* at 5. Rather, "[a]t the most, plaintiffs' evidence suggests differing 'policies' or

3  practices depending on the branch or the district, rather than on a nationwide basis." *Id.*

4  Plaintiffs worked at only one store during a combined timeframe of October

5  2005 through February 2007. Compl., ¶¶ 13 and 15. Crediting fully Plaintiffs' allegations

6  and those of their witnesses – Hansen and Cruz, it is apparent that, at most, they have

7  information about what two or three store managers did in a single district. Upon this

8  localized observation, they cannot support a state-wide claim against Dollar Tree.

9  Certifying a class of thousands when time alterations occur to less than one percent of

10  the employees will create the logistical headaches the commonality requirement was

11  designed to prevent. *Cornn v. United Parcel Service, Inc.*, No. 2005 WL 2072091 at *5

12  (N.D. Cal. Aug. 26, 2005) ("Because the Court cannot determine whether a driver

13  performed work during the interval in question without undertaking individualized

14  inquiries that predominate over any common questions, class certification would be

15  inappropriate.").

16  **2.  Plaintiffs' Claims Are Not Typical Of The Proposed Class Of Hourly Employees.**

17  The claims of Plaintiffs must be typical of the claims of the class. To be

18  considered typical for purposes of class certification, the claims of the putative class

19  must be "fairly encompassed by the named plaintiff's claims." *General Tel. Co. of the*

20  *Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation omitted). The

21  commonality and typicality requirements are similar and tend to merge. *Id.* at 157 n. 13.

22  "The test of typicality is whether other members have the same or similar injury, whether

23  the action is based on conduct which is not unique to the named plaintiffs, and whether

24  other class members have been injured by the same course of conduct." *Dataproducts*,

25  976 F.2d at 508. Plaintiffs are unable to prove that their claims are "typical" of the

26  classes of hourly employees they seek to represent.

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 8 -

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS

CASE NO. C 07-03108 JSW

1    First, as indicated above, Plaintiffs, both Assistant Managers, worked at a

2    single Dollar Tree store in Rohnert Park, California during a combined timeframe of

3    October 2005 through February 2007. Compl., ¶¶ 13 and 15. They implicate a single

4    person, their District Manager, Mr. Tellstrom, as having allegedly directed the improper

5    alterations. They concede that they presently do not have any facts regarding anyone

6    other than Mr. Tellstrom. *See* RJN Exh. A, 4:15-5:3; 7:16-20. Moreover, the Plaintiffs'

7    Store Manager cannot remember if Mr. Tellstrom actually told him to improperly adjust

8    employees time. Hansen Dep. 273:23-274:2. In fact, Mr. Hansen states he knew the

9    improper alterations were contrary to Dollar Tree policy. *Id.* 648:13 – 17. Thus, there is

10   absolutely no evidence that the Plaintiffs' claims of shaving are "typical" of the hourly

11   employees in other stores or districts.

12   Not only have Plaintiffs failed to provide any evidence that their claims are

13   typical, the evidence shows exactly the opposite. Baas' time entries were adjusted

14   fourteen percent of the time. Crandall Decl. at Ex. A (¶ 21). This is considerably higher

15   than the frequency of edits found across the entire proposed class. *Id.* The mean

16   frequency of adjustments using the Fastech data was 0.6 percent and for the Compass

17   data was 0.4 percent with the median for both being zero. *Id.* at Ex. A (¶¶ 17-18). In

18   other words, Baas' time was adjusted, for whatever reason, fifteen times more frequently

19   than the average employee. Baas is at or above the 95th percentile in frequency of edits.

20   *Id.* at Ex. A (¶ 21). Even within her own store she is an anomaly. Baas had her time

21   edited with more frequency than any other employee in her store, ranking number one

22   out of more than forty employees. *Id.* at Ex. A (¶ 22). Based on the statistics alone,

23   Baas' claims are not typical of the class.

24   While not as stark as Baas, the frequency of adjustment to Lofquist's time

25   exceeds that of the average employee. *Id.* at Ex. A (¶ 23).

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 9 -

1

**3.    The Plaintiffs Do Not Fairly And Adequately Protect The Interests Of Other Members Of The Class.**

2

3

Rule 23(a)(4) dictates that the representative plaintiff must fairly and

adequately protect the interests of the class. To satisfy constitutional due process

4

concerns, unnamed class members must be afforded adequate representation before

5

entry of a judgment which binds them. *See Hanlon*, 150 F.3d at 1020 (internal citations

6

omitted). "Absent class members must be afforded adequate representation before

7

entry of a judgment which binds them." *Id.*

8

**a.    The Plaintiffs' Counsel Is In Conflict With The Class.**

9

For the representative Plaintiffs' counsel to meet the adequacy

10

requirement, the counsel must not have any conflicts of interest with other class

11

members and must be able to prosecute the action vigorously on behalf of the class.

12

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). "[W]here there

13

is reason to doubt the loyalty of counsel or the adequacy of counsel's representation,

14

serious questions arise concerning the preclusive effect of any resulting judgment." *Cal-*

15

*Pak Delivery, Inc. v. United Parcel Serv.*, 52 Cal.App.4th 1, 12 (1997). Plaintiffs'

16

counsel, The Edgar Law Firm, currently represents Hansen and Miguel Cruz in a

17

misclassification wage and hour lawsuit pending against Dollar Tree in this Court.

18

Hansen is the Store Manager whom Plaintiffs allege improperly altered their time

19

records. Hansen is also responsible for terminating Plaintiffs' employment with Dollar

20

Tree. During her deposition, Lofquist alleged she worked off the clock stocking, in the

21

presence of and at the direction of Hansen. Lofquist Dep. 247:4-248:17. That allegation

22

was denied by Hansen. Hansen Dep. 547:23-548:16. Moreover, Hansen testified in his

23

deposition that he knew it was against Dollar Tree policy to alter time records to reflect

24

less time than an employee actually worked. Hansen Dep. 648:13-17.

25

Plaintiffs' allegation that Hansen violated the law is in conflict with

26

Hansen's interests and deposition testimony. The heart of Plaintiffs' allegations is that

27

Dollar Tree has a policy of using the Compass system to deny overtime. Hansen

28

- 10 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS

CASE NO. C 07-03108 JSW

1  explicitly denies this allegation.  Plaintiffs' allegations are clearly prejudicial to the

2  interests of Hansen.  In a class action context, "class counsel are subject to a

3  'heightened standard' which they must meet if they are to be allowed by the Court to

4  represent absent class members."  *Huston v. Imperial Credit Commercial Mortgage*

5  *Invest. Corp.*, 179 F.Supp.2d 1157, 1167 (C.D. Cal. 2001).  The Edgar Law Firm's

6  representation of both Hansen and Plaintiffs is a clear conflict of interest.

7          The District Court for the Northern District of California follows California

8  ethical standards. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); Civil

9  Local Rule 11-4(a)(1). The applicable standard of conduct is set forth in Rules of

10  Professional Conduct of the State Bar of California, Rule 3-310(c)(3), which provides as

11  follows:

12          A member shall not, without the informed written consent of
           each client ... [r]epresent a client in a matter and at the same
13          time in a separate matter accept as a client a person or entity
           whose interest in the first matter is adverse to the client in the
14          first matter.

15  "A conflict of interest exists when a lawyer's duty on behalf of one client obligates the

16  lawyer to take action prejudicial to the interests of another client ...."  *Moreno v.*

17  *Autozone, Inc.*, 2007 WL 4287517, *5 (N.D. Cal. Dec 6, 2007).  "An 'adverse' interest is

18  one that is 'hostile, opposed, antagonistic ... detrimental, unfavorable' to one's own

19  interests."  *Id.* (quoting *Ames v. State Bar,* 8 Cal.3d 910, 917 (1973)).

20          The Edgar Law Firm cannot sweep the conflict under the rug by obtaining

21  waivers from just the named plaintiffs.[3]  Waivers would have to be obtained from every

22  class member. *See Moreno v. Autozone, Inc.*, 2007 WL 4287517 at *7. "As a practical

23  matter, [Plaintiff's law firm] can not obtain written waiver of the actual conflicts of interest

24  that exist from the absent class members." *Id.* "Absent each client's informed written

25  consent, dual representation of clients whose interests actually conflict is prohibited and

26  results in "per se or automatic" disqualification." *Id.* at *6 (citing *Flatt v. Sup.Ct.,* 9

27  _____

28  [3] Dollar Tree has asked for, but Plaintiffs have failed to provide copies of the alleged waivers
    received from them.  See Berman Decl. at ¶¶ 4 and 5, Ex. A.

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 11 -

1   Cal.4th 275, 284 (1994)).  Moreover, under the so-called "hot potato rule," the "dual

2   representation conflicts cannot be cured by the expedient of severing the relationship

3   with one of the clients."  *Id.*

### b.    The Plaintiffs' Interests Are In Conflict With The Class.

5       "Adequate representation depends on the qualifications of counsel for the

6   representatives, an absence of antagonism, a sharing of interests between

7   representatives and absentees, and the unlikelihood that the suit is collusive."  *Crawford*

8   *v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (internal citation omitted).  Plaintiffs will not be

9   able to fulfill this obligation because their interests are antagonistic to the interests of the

10  class members they seek to represent.  Plaintiffs, former Assistant Managers, had a duty

11  to make sure the time records accurately captured all time worked by employees.

12      Plaintiffs, as Assistant Managers, were and are responsible for enforcing

13  Dollar Tree's policies, particularly when the Store Manager is not present.  Because

14  Plaintiffs' and other Assistant Managers were charged with the responsibility of ensuring

15  accurate time records were kept, they cannot adequately represent a class of hourly

16  employees who allege tampering with their time records, particularly where the putative

17  representatives may have done the tampering.  Plaintiffs knew it was against Dollar Tree

18  policy to shave time; yet neither complained when the Store Manager allegedly took time

19  away from them and others.  Baas Dep. 81:25-82:2; Lofquist Dep. 60:15-17.[4]  Indeed,

20  both Plaintiffs were aware of Dollar Tree's Careline whereby employees can

21  anonymously alert Dollar Tree to violations of the law or policy.  Baas Dep. 74:5-9;

22  Lofquist Dep. 60:5-8.  Neither Plaintiff contacted the Careline or any other person to

23  voice their concerns.  Baas Dep. 74:2-4; Lofquist Dep. 60:15-17; 214:9-13.  Baas

24  certainly knew what to do if her pay was incorrect; as she had previously contacted

25  Candace Camp from Dollar Tree's regional human resources office when she was not

---

[4] Lofquist testified that she saw Hansen taking time away from a cashier named Tina.  See Lofquist Dep. 40:21-41:12.

- 12 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA  94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS                    CASE NO. C 07-03108 JSW

1  getting paid an Assistant Manager's rate after her promotion. Baas Dep. 59:19-60:7.

2  Both Plaintiffs knew how to alert Dollar Tree to problems, yet chose not to do so.

3         Because both Baas and Lofquist were involved in the alleged wrongful

4  acts, their claims are not typical of the employees who may have been unwittingly

5  harmed. *See Hanon*, 976 F.2d at 508 ("[A] named plaintiff's motion for class certification

6  should not be granted if there is a danger that absent class members will suffer if their

7  representative is preoccupied with defenses unique to it."). "Where there is a conflict

8  that goes to the very subject matter of the litigation, it will defeat a party's claim of class

9  representative status. Thus a finding of adequate representation will not be appropriate

10 if the proposed class representative's interests are antagonistic to the remainder of the

11 class." *Global Minerals & Metals Corporation v. Superior Court,* 113 Cal.App.4th 836,

12 851 (2003); *Richmond v. Dart Industries, Inc.,* 29 Cal.3d 462, 478-479 (1981).

13        The court in *Van Allen v. Circle K Corp.*, 58 F.R.D. 562, 564 (C.D. Cal.

14 1972), reached a similar conclusion, holding that the interests of former independent

15 operators, who would be interested only in the fullest possible financial recovery, were

16 adverse to current operators who wished to keep working with a financially robust

17 defendant with a favorable public image.

18                   **4.    Plaintiffs Do Not Satisfy The Requirements Of Rule 23(b).**

19        Plaintiffs argue that it is "obvious" that varying outcomes would result from

20 individual claims. Opening Brief at 11:5-7. But this assertion, which is always true,

21 misunderstands the law. "[C]ertification requires more, however, than a risk that

22 separate judgments would oblige the opposing party to pay damages to some class

23 members but not to others or to pay them different amounts." *Zinser v. Accufix*

24 *Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (internal citation omitted).

25 Rather, "Rule 23(b)(1)(A) authorizes class actions to eliminate the possibility of

26 adjudications in which the defendant will be required to follow inconsistent courses of

27 continuing conduct. This danger exists in those situations in which the defendant.by

28 reason of the legal relations involved can not, as a practical matter, pursue two different

- 13 -

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS        CASE NO. C 07-03108 JSW

1    courses of conduct." *Id.* That is not the case here: both parties agree that time shaving

2    is illegal and that Dollar Tree's policies prohibit time shaving.

3    Nor is this a case where common issues predominate. The predominance

4    inquiry "focuses on the relationship between the common and individual issues." *Local*

5    *Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d

6    1152, 1162 (9th Cir. 2001). Consequently, the mere presence of common issues of fact

7    or law is not by itself sufficient. *Hanlon,* 150 F.3d at 1022. Rather, the proposed class

8    must be "sufficiently cohesive to warrant adjudication by representation." *Id.* at 1011.

9    Hence, the test measures the relative weight of the common claims against the

10   individualized inquiry. *Id.* "Implicit in the satisfaction of the predominance test is the

11   notion that the adjudication of common issues will help achieve judicial economy."

12   *Zinser,* 253 F.3d at 1189 (internal citations omitted).

13   In this case, the ability of each class member of the proposed class to

14   recover depends on a separate set of facts applicable only to him or her and will require

15   individualized proof employee by employee. Examination of the Compass system is not

16   enough. During their depositions, both Hansen and Cruz testified that it is impossible to

17   tell if manual alterations to time records are corrections or not. Hansen Dep. 635:9-23.

18   Cruz Dep. 454:1-455:15. The recorded time in the Compass system would have to be

19   compared against some other record of an employee's time, if such secondary source

20   even exists. Each employee would have to be examined as to the alterations to prove

21   that a violation occurred.[5] Individual inquiries would predominate over any common

22   proof. In such cases, class certification is routinely denied because individualized issues

23   predominate. *Mateo v. M/S Kiso,* 805 F.Supp. 761, 774 (N.D. Cal. 1991). "If the main

24   issues in a case require the separate adjudication of each class member's individual

25   claim or defense, a [class] action would be inappropriate." *Zinser,* 253 F.3d at 1189.

26

27   _____

[5] For example, Jose Baeza, an Assistant Manager at Store No. 1868, testified that nothing

28   improper ever occurred with respect to his wages. Baeza Decl. at ¶¶ 1-8 (attached to the
     Declaration of Translator Jose Estrada).

- 14 -

KAUFF McCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA  94104
TELEPHONE (415) 421-3111

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS          CASE NO. C 07-03108 JSW

1          Finally, Plaintiffs are unable to demonstrate that any of the common

2  questions can be resolved by proof that applies to all class members equally.  Indeed,

3  Plaintiffs cannot present any plan to the trial Court for managing the complex issues of

4  fact raised by the class claims.  The court must balance the manageability regarding the

5  litigation of issues common to the class as a whole against questions affecting individual

6  class members.  *Abed et al. v. A.H. Robins Company, et al.* (*In re Northern District of

7  California, Dalkon Shield IUD Products Liability Litigation*), 693 F.2d 847, 856 (9th Cir.

8  1982).  This case, as a class action is not manageable, as it will quickly devolve into

9  thousands of individual inquiries regarding the schedules of individual class members,

10  the actions of their Store Managers and Assistant Managers, and the circumstances

11  surrounding the manual entries into Compass and Fastech.  There are over 10,000

12  hourly employees in the proposed class.  A case of this magnitude is unmanageable

13  when individualized issues predominate.

14  **III.   CONCLUSION**

15          For the reasons stated above, certification of the putative class should be

16  denied.

17  DATED:    March 13, 2008        Respectfully submitted,

18                KAUFF MCCLAIN & MCGUIRE LLP

20                By:_____/ S /_____
                        ALEX HERNAEZ

21                Attorneys for Defendant

22                DOLLAR TREE STORES, INC.

23  4825-7894-8610.2

- 15 -

DEFENDANT DOLLAR TREE STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS    CASE NO. C 07-03108 JSW