1  Donald S. Edgar, Esq. (SBN 139324)
   Jeremy R. Fietz, Esq. (SBN 200396)
2  Rex Grady, Esq. (SBN 232236)
3  **EDGAR LAW FIRM**
   408 College Avenue
4  Santa Rosa, California, 95401
   Tel:   (707)  545-3200
5  Fax:   (707)  578-3040
6
   Attorneys for Plaintiffs,
7  KASSONDRA BAAS and KELLY LOFQUIST
   individually and on behalf of all employees
8  similarly situated
9

10               **IN THE UNITED STATE DISTRICT COURT**

11            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13

14  KASSONDRA BAAS and KELLY            )  **CASE NO.  C 07-03108 JSW**
    LOFQUIST, individually and on behalf of all  )
15  others similarly situated,          )
                                        )  **PLAINTIFFS' REPLY BRIEF IN**
16              Plaintiffs,             )  **SUPPORT OF MOTION FOR CLASS**
                                        )  **CERTIFICATION**
17                                      )
         v.                             )  Hearing Date: April 4, 2008
18                                      )
                                        )  Time:   9:00 a.m.
19  DOLLAR TREE STORES, INC.,           )
                                        )  Courtroom 2
20              Defendant.              )
                                        )  Honorable Jeffrey S. White
21                                      )
                                        )
22  _____    )

23

24

25

26

27

28

---

## I.    DEFENDANT MISUNDERSTANDS THE PLAINTIFFS' CASE AND FOCUSSES ON MATTERS IRRELEVANT TO THE CERTIFICATION INQUIRY

### A.    The Fact That Time Shaving Contravened Official Dollar Tree Policy Is Irrelevant

The Plaintiffs' certification motion was directed to the allegations contained in its now operative complaint (Third Amended). This complaint does not allege that it is Dollar Tree's corporate policy to shave time.[1] This case is not about whether Dollar Tree's corporate policies direct employee time shaving. Rather, this case has its root in one undeniable fact: many Dollar Tree hourly employees (including the representative plaintiffs) had electronic time punches altered, resulting in less time reported to payroll and less pay in their pockets. Defendant does not deny the subtraction of work time from the computer program. Dollar Tree does provide the Court with evidence that such time shaving would violate company policy, but at the same time provides evidence reflecting that more than 4,500 of Defendant's employees had their compensable time subtracted. Defendant seems to believe that it is not liable to pay its employees for all their time worked because it had really great official company "policies." In the context of failure to pay wages due, company policies are irrelevant. What is relevant is whether Plaintiffs and the members of their class received pay for all time worked.

### B.    Most Of Defendant's Statistics Are Irrelevant

At the time Plaintiffs brought their motion, they had only received from Dollar Tree the records from a single district. As discussed in the moving papers, those records showed time shaving of fifty-seven (57) employees (including the two representative plaintiffs), by fifteen (15) different management personnel, in those few stores alone. Since the filing of Plaintiffs' motion,

---

[1]    At the beginning of this case, there were additional allegations of fraud and corporate malfeasance. Discovery has borne out that the time shaving is a broad-based problem affecting thousands of employees in spite of official corporate policy that all employees are to be paid for all time worked. The Third Amended Complaint reflects the Plaintiffs' allegation that time shaving occurred on a broad scale and does not depend upon the presence of bad corporate policy. Earlier, pre-discovery, allegations in prior complaints are not relevant to the certification inquiry. Nor are the arguments of counsel in defense of those prior allegations relevant. Defendant remains stuck in defending its corporate policies when those policies are no longer in issue. Plaintiffs' allegations rely only upon the occurrence of time shaving (not whether it was pursuant to official company policy or in contravention of it).

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION                    07-03108 JSW

1   Defendant has produced the records for all of its California store employees. Given the late timing

2   of Defendant's production, Plaintiffs' recently retained database information technology expert has

3   not had enough time to verify the Defendant's representations concerning the data. Plaintiff is

4   prepared, however, for purposes of the present motion, to concede that the statistics espoused in

5   Defendant's expert report are correct.

6           In its Opposition brief, Defendant repetitiously voices the mantra that the time shaving was

7   infrequent. Defendant goes to extreme lengths, via an incomprehensible statistical analysis, to

8   convince the Court that the time-shaving was *not* done to most employees, and those that it was

9   done to were *not* subject to time-shaving everyday. Those statistics, and the conclusions based

10  thereon, are irrelevant. That most of the store employees were not subject to time-shaving, or that

11  the time-shaving was relatively "infrequent," would *only* be relevant to the certification inquiry if

12  the class could not satisfy the numerosity requirement. While Defendant's statistical analysis may

13  show that time shaving did not occur to all employees every day, Defendant's own evidence shows

14  that across California *more than four thousand, five hundred (4,500) employees were subject to time*

15  *shaving at least once.*[2] While defendant may feel that such numbers reflect only "infrequent" time

16  shaving, those numbers are more than enough to justify class treatment. More than four thousand,

17  five hundred employees punched in their time, and then had their time shaved to reduce their

18  employment hours before payroll was calculated. All of them are entitled to receive their wages for

19  the time that was taken from them. It does *not* matter that a bunch of other employees did not have

20  their time shaved. It does *not* matter that the time shaving did not occur to members of the class

21  every day. At the certification stage, the Court need only satisfy itself, under the guideposts of Rule

22  23, that class treatment is the best and most practicable manner to address the legal claims brought

23  by the Plaintiffs and the putative class.

24  **C.    Defendant Fails To Address That Time Shaving Has No Legal Justification**

25          Defendant utterly fails to address Plaintiffs' argument and evidence that there is simply no

26  legal justification for time shaving. Defendant utterly fails to address the logic of Plaintiffs'

27  position (that was adopted and agreed to by their own witness and District Manager) – namely, that

28  _____

          [2] See footnotes no. 3 and 4, below.

1    while there may be good reason to add to an employee's punched time, there is no good reason (not
2    to mention legal justification) to take time away.  The logical inference, based upon the laws of
3    physics, was discussed at length in Plaintiffs' moving papers and stems from the fact that in order to
4    make a time punch the employee must be physically present at one of the store's work stations.
5    Any post-time-punch subtraction of work time ("time shaving") amounts to a representation that the
6    employee was not there at the time that the laws of physics (and the design of the computer system)
7    require him or her to be there.  Defendant fails to address the critical distinction between adding
8    time to, and shaving time from, the electronic records.  Despite the obvious import of this issue and
9    the detail to which Plaintiffs addressed this issue in their papers, Defendant ignores the distinction
10   and the simple logic behind it.  Indeed, Defendant's utter silence in response to the reasoning
11   behind Plaintiffs' position is telling.  Instead, Defendant chooses to rely upon their overly broad
12   conclusion that the reasons for alterations to time in general (without distinction between adding
13   and subtracting) may be legitimate and that there is simply no way to determine what those reasons
14   might be.  That is true...sort of...in an overly general sense, *but only when no distinction is being*
15   *made between adding and subtracting time.*

16        As discussed in the moving papers, and ignored in Defendant's opposition brief, when one
17   considers the distinction between adding time and shaving time, it becomes clear why the
18   Defendant wants to lump the two categories of alterations together and say there may be "proper
19   reasons for manual adjustments to time."  Indeed, when asked in such a general sense, witnesses
20   have agreed with that.  However, when Dollar Tree's lawyer asked their own witness to accept that
21   there are good reasons to subtract time, he *disagreed.*  In fact, the witness accepted the logical
22   distinction between adding and subtracting time, and *agreed* with Plaintiffs' position that *there is*
23   *no good reason to subtract time.*

24   **II.    EVEN WHILE MISDIRECTING THE RELEVANT INQUIRY, DEFENDANT'S**
25   **EVIDENCE PROVIDES A WEALTH OF SUPPORT TO PLAINTIFFS' MOTION**

26        While Defendant's argument misunderstands both the Plaintiffs' case and Rule 23,
27   Defendant's evidence actually provides a wealth of support to Plaintiffs' motion.    In fact,
28   Defendant's own evidence renders the propriety of certification virtually irrefutable.

-3-

1      Numerosity. Defendant's own expert report states that there are fifteen thousand (15,000)

2    store employees.[3] Defendants own statistical analysis reflects that at least thirty (30) percent of

3    those employees had their time shaved.[4] That means that according to the Defendant's own

4    accounting *there are at least 4,500 (i.e. 30% of 15,000) current and former employees of Dollar*

5    *Tree who have potential class claims identical to those of the class representatives.*

6      Commonality. Defendant does *not* dispute the evidence of time-shaving discussed in the

7    Plaintiffs' motion. In addition to supporting the numerosity element, Defendant's own admissions,

8    evidence, and expert report establish that, just like the named class representatives, *time was shaved*

9    *from thousands of other hourly employees using the same computer programs used to shave the*

10    *representative plaintiffs' time.* This makes the Plaintiffs' experience common to the other class

11    members.

12      Typicality. Anyone whose time was shaved has potential claims and causes of action

13    identical to those of the Plaintiffs. Such claims stem from the failure to pay for all time worked. It

14    is plain and obvious that whether the Plaintiffs' had their time shaved more or less than other class

15    members does not render their claims somehow untypical. The claims are typical, if not identical,

16    and only the amount of damages vary depending upon the amount of time subtracted.

17      Adequacy of representation. Defendant's attacks upon the adequacy of the class

18    representatives and class counsel are addressed separately below.

19          **III.  PLAINTIFFS AND THEIR COUNSEL CAN AND DO ADEQUATELY**

20                 **REPRESENT THE PLAINTIFFS' CLASS**

21      Leaving no stone unturned, Defendant also challenges Plaintiffs' motion for class

22    certification on the grounds that the named class representatives and class counsel will not

23    adequately represent the interests of the class. Defendant's motives in trying to have Plaintiffs' and

24    their counsel excluded from class representation, no doubt, are *not* entirely altruistic. The only

25    beneficiary of such an order is the Defendant.

26

27       [3] See Expert Report, Page 3, paragraph 5 – attached as Exhibit A to the Declaration of
Robert Crandall.

28

       [4] *Id* at page 8, paragraphs 17 and 18.

-4-

1  **A.    There Is No Conflict Between The Representative Plaintiffs And The Putative Class**

2       Defendant allegedly identifies a "fundamental" distinction between the representatives and

3  the class which precludes the possibility of adequate representation by the named Plaintiffs. This

4  distinction lies in the precise job titles and supposed duties of the named Plaintiffs. For part of their

5  employment, they were "assistant managers," rather than mere sales associates. As assistant

6  managers they still primarily performed the same cashiering and other regular duties typical of

7  other store employees, but did possess some enhanced duties (primarily, as their name suggests, to

8  assist the manager). All that is important, however, is that even those with the lofty title of

9  "assistant manager" had to punch in and out using the exact same computer time recording system

10  as every other hourly store worker. The class encompasses all the hourly workers because all the

11  hourly workers were subject to the same time punch system and, as a result, were subject to the

12  same potential to have their punch entries altered.[5]

13       Defendant argues that in assisting the manager, their duties as "assistant managers"

14  supposedly included making "sure the time records accurately captured all time worked by

15  employees." Even if it were true that the Plaintiffs, as "assistant managers," were charged with

16  such a duty, and it followed, as Defendant asserts, that persons who were responsible for inaccurate

17  recording of time could not adequately represent persons who suffered the consequences of such

18  errors, the evidence is lacking that the named class representatives ever did anything that prejudiced

19  the rights of the class in the manner alleged in their Complaint. Neither Kassondra Baas nor Kelly

20  Lofquist ever entered punches into the Compass system that "shaved" the time of other employees.

21  If they had, Defendant certainly would have provided evidence of this.

22       The best that Defendant can attest to in support of its claim of an adverse interest is that the

23  named representatives found out about the " time shaving" and did not take steps to stop it. In

24  response to this, Plaintiffs can only wonder if Defendant is unaware that consulting with attorneys

25

26  _____

27      [5]  It is interesting to note that Defendant's own expert seems to not have attached any
significance to the difference between time punch reductions to assistant managers and time punch

28  reductions to other hourly employees. Indeed, he could not have, because they all use the same
system and are subject to the same potential for abuse.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION                    07-03108 JSW

1    and then bringing a lawsuit seeking to enforce wage and hour laws and impose orders to prevent
2    further violation of these laws qualifies as doing something to stop "it."
3          It is worth reiterating that the "assistant managers" were all paid on an hourly basis and had
4    the same obligation to punch in and out of the electronic time keeping system at issue. The
5    Plaintiffs were subject to the time shaving occurrences *in the same way* that the other members of
6    the class were. In bringing their suit, they have actually invoked the surest means of remedying the
7    wrong.

8    **B.    There Is No Conflict Between The Class And Class Counsel**.

9          Defendant's argument in support of the existence of a conflict between Plaintiffs' counsel
10   and the putative class rests on the fact that counsel not only represent the named Plaintiffs and the
11   class here, but also a class of managers against the same Defendant. The latter case involves
12   violation of the State's overtime law through the misapplication of the so-called administrative
13   exemption to overtime. The allegation there is that Defendant designated certain persons as salaried
14   managers but employed those "managers" primarily as regular employees, thus entitling the
15   "managers" to overtime pay. That manager class in that case is headed by two persons, including
16   John Hansen, who was the manager of the store where Plaintiffs Baas and Lofquist were employed.

17         The supposed conflict arises, says Defendant, from the fact that Plaintiffs here have alleged
18   that Hansen violated the law. "Plaintiff's allegations," says Defendant, "are clearly prejudicial to
19   the interests of Hansen." The very fact that there is a conflict between Plaintiffs and Hansen, both
20   of whom are represented by Plaintiffs' counsel, renders counsel inadequate.

21         In truth, there is *no conflict* between the Plaintiffs and Mr. Hansen, and there is *no conflict*
22   between the two classes Plaintiffs and Mr. Hansen respectively represent. The Plaintiffs' class here
23   is a class of employees who were not paid for all work they performed. Mr. Hansen's class is a
24   class of "managers" who should have been paid at the overtime rate of pay for all hours worked in
25   excess of eight per day and forty per week. The ability of one class to recover does not depend on
26   the failure of the other class to do the same. The cases and claims are utterly distinct. They do not
27   overlap or conflict in any way.

28

-6-

1       Furthermore, it should be pointed out that Plaintiffs have *not* alleged that Mr. Hansen has

2 violated the law.  They have not sued Mr. Hansen for damages or restitution.  Instead, they have

3 alleged that Defendant Dollar Tree did not pay them all wages they earned and they have sued

4 Dollar Tree in order to obtain their unpaid wages.  To the extent that Mr. Hansen is involved in

5 their case, he is a witness, not a party.  In any testimony as a witness in which he admits shaving

6 employee time, Mr. Hansen does not place himself in jeopardy because it is not he who is

7 responsible to plaintiffs for the payment of wages.  Nothing Mr. Hansen does as a witness, nor what

8 Plaintiffs' counsel does as representatives of Plaintiffs and their class, will ever place Mr. Hansen in

9 peril.

10      Similarly, there is no conflict arising between Mr. Hansen and the Plaintiffs and their Class

11 in Mr. Hansen's case against Defendant.   Mr. Hansen simply seeks recovery of overtime wages he

12 and other "managers" should have been paid but were not.  The issue of whether he and his class of

13 "managers" recovers overtime wages does not depend on the failure of the instant Plaintiffs'

14 separate claims for recovery of wages for time shaved by Dollar Tree.  Consequently, Plaintiffs'

15 counsel, acting in their capacity as counsel for Mr. Hansen and his class, will never be faced with

16 the choice of sacrificing the interests of Plaintiffs and their class in order to recover more fully (or

17 at all) on behalf of Mr. Hansen and his class.

18      If it is not already clear that no conflict exists that would render Plaintiffs' counsel

19 inadequate representatives for the class, it *must* become clear when an actual adjudicated case is

20 examined.  One particularly instructive case dealing with the existence of conflicts between a class

21 and its counsel is one cited by Defendant in its opposition brief.  This is the case of *Moreno v.*

22 *Autozone, Inc.*, which was decided by this very Court four months ago.

23      In *Moreno*, the Defendant brought a Motion to disqualify the firm of Bailey Pinney.  This

24 firm simultaneously represented plaintiffs in a class action that had settled *and* class members who

25 were objecting to the settlement.  Here is what the Court decided:

27     The Court finds that Moreno and Medrano, as objectors to the Martinez settlement,

28     have an actual conflict of interest with, and adverse interest to, declarants McDaniel,

-7-

1         Know and Velox, each of whom is a Martinez class members that has not objected to

2         the settlement and has submitted a claim form for payment. Bailey Pinney's

3         representation of Moreno and Medrano from late 2005 to the present has obligated

4         the law firm to advocate that the settlement and judgment in Martinez should not be

5         approved– a position that Bailey Pinney has zealously advanced before the state trial

6         and appellate courts. This advocacy is adverse to the interests of McDaniel, Know,

7         and Velox, also clients of Bailey Pinney since at least November 2006, as they are

8         Martinez class members who have approved the settlement, submitted claim forms,

9         and await payment. (*Moreno v. Autozone* (N.D. Cal. 2007) 2007 WL 4287517, *4).

11         The case before this Court at present is markedly different from what the Court faced in

12 *Moreno*. Here, Plaintiffs' counsel are <u>not</u> representing members of the same class against one

13 another. Plaintiff's counsel are representing *two distinct classes in distinct cases that do not*

14 *overlap with one another and pose no possibility of conflict.* In no way whatsoever is there a

15 potential that the furtherance of the interests of one class, or of some members of the class, will

16 depend on the failure of the interests of members of that same class, as was the case in *Moreno*, or

17 on the failure of the claims of the members of the *other* class Plaintiffs' counsel are representing.

18 As there is not even the potential for conflict arising from the two class actions and counsel's

19 representation of the two different classes seeking recovery in those cases, logic dictates there can

20 be no actual conflict either.

21 **IV.  RULE 23(b) IS SATISFIED**

22 **A.    Common Issues Predominate**

23         Defendant argues that individual issues predominate, thereby precluding class treatment.

24 The premise upon which this erroneous conclusion is based is that the Plaintiffs have to prove the

25 absence of a good reason to each time that an employee's punched time was reduced before being

26 sent to payroll. This premise is false. It is false because, as discussed above, there is no legal

27 justification for shaving or reducing time. The Court and/or jury may presume based upon the

28 simple logical inferences discussed in the moving papers, that subtracted time amounts to a failure

-8-

1  to pay earned wages. As a result, there are virtually no individual issues, other than damages, and
2  those are, as discussed in the moving papers, to be determined by simple mechanical calculations
3  based upon Defendant's own database.

4      Indeed, how disturbing would it be if Defendant's position were accepted. An employer
5  could routinely shave time from their employees, and then, if caught, glibly assert that the plaintiffs
6  have no relief unless they can affirmatively prove there was no good reason for the manipulation of
7  the records. Such a result would be the antithesis to the public policy of California and the express
8  purpose of California's wage and hour laws to protect vulnerable workers in the state.

9  **B.    The Class Can Be Defined In A Way To Promote Notice Efficiency**

10     Defendant's opposition papers seem to suggest that the proposed class consists of all hourly
11  employees of Dollar Tree. As discussed herein, Defendant has provided the Court with evidence
12  that "only" approximately 30% of the hourly employees were subject to time shaving. The
13  Defendant then argues that to sweep up thousands of uninterested people in a class action when the
14  majority of them do not have claims would raise manageability concerns. This is a "straw man"
15  argument, since the class certification motion explicitly defines the class in terms of those hourly
16  employees whose time was *reduced*. Dollar Tree's own database records show who the 4,500+
17  individuals are who were subject to reduction in work time. The class may therefore be defined in
18  terms of those whose time was reduced, as opposed to all hourly employees. By the very definition
19  of the class, those without potential claims are not swept into the litigation. Clearly, class treatment
20  is clearly superior to any other method of adjudication.

21  **V.    JUSTICE HERSELF IS SERVED THROUGH CLASS CERTIFICATION**

22     While not an explicitly enumerated factor amongst the Rule 23 framework, Plaintiffs urge
23  the Court to consider the effects of denying class certification upon justice herself. As discussed
24  herein, Defendant's own records show that more than 4,500 low-income hourly wage earners were
25  subject to actions that deprived them of pay for their time worked. Each of these over 4,500 low
26  income workers dutifully punched in and out for their shifts, believing that the data entered would
27  be transmitted to payroll and that they would be paid accordingly. However, before the time
28  punches were sent to payroll, thousands of entries were altered to reduce the amount of time

-9-

1  reflected in the records.   It is plain to see that if Defendant succeeds in reducing this case to a mere
2  two-person action, Defendant will effectively continue to deprive thousands of deserving workers
3  their due pay.   It is respectfully submitted that this case presents an example of the highest and best
4  use of the class action mechanism – that is to give voice to thousands of wronged individuals who
5  otherwise would have no voice, and to do so through the most efficient use of the Court's resources.

6  ## VI.  CONCLUSION

7      The post-entry reduction of time (i.e. time shaving) in the employee time records is admitted
8  by Defendant's employees.  Defendant's own evidence establishes that more than 4,500 individuals
9  were subject to time shaving.  Defendant's own records inform us who the class members are and
10  how much time was taken from them.  The putative class meets all the requirements of Rule 23.

11      For all the reasons set forth herein, Plaintiffs respectfully reiterate their request for an Order
12  certifying the class and to set a hearing for determination of how best to disseminate class notice.

13
14
    Dated:  March 21, 2008                    **EDGAR LAW FIRM**
15
16                                            By:
17                                                Jeremy R. Fietz, Esq.
18
19
20
21
22
23
24
25
26
27
28

                                    10